[No. 32398.　Department Two.　August 17, 1953.]

THE STATE OF WASHINGTON, *Respondent*, v. ROY ALTON GREEN, *Appellant*.[1]

[1] Reported in 260 P. (2d) 343.

*Warner, Pierce & Peden,* for appellant.

*Charles O. Carroll* and *F. A. Walterskirchen,* for respondent.

DONWORTH, J.—Defendant, together with Robert Geros and Louis Wilson, was charged with the crime of burglary in the second degree as defined by RCW 9.19.020 [*cf.* Rem. Rev. Stat., § 2579]. The action was dismissed as to Robert Geros prior to trial, and Louis Wilson fled the jurisdiction of the court. The trial, therefore, proceeded against Roy Green as the only defendant, and the jury returned a verdict of guilty. Motions for a new trial and in arrest of judgment were made and denied. Defendant has appealed from the judgment and sentence.

The state of Washington and appellant both submitted the case to this court upon their respective briefs without oral argument.

The preliminary facts necessary for an understanding of this case are these: The Modern Auto Rebuild Co., in Seattle, was burglarized twice, first on December 8, 1951, and again on January 8, 1952. Certain facts brought to the attention of investigating officers led them to arrest appellant and Robert Geros in their hotel on January 16, 1952. They were taken to police headquarters, where they were booked "open for investigation of the burglary of Modern Auto Rebuild."

As a result of voluntary statements made by appellant while being questioned by police detectives after his arrest it was determined that he was implicated in the burglary of Huling Brothers Inc. on January 14, 1952, at approximately three a. m. It was for this crime that he was charged, tried, and convicted in the present case. Appellant's prin-

cipal defense was that his arrest was illegal because made without a warrant, and without probable cause or reasonable grounds for belief of his guilt on the part of the officers at the time of the arrest. He claimed that they acted merely on suspicion.

Several months prior to the trial in this cause, appellant moved to suppress "all of the evidence" in this case for the reason that it was obtained as a result of an illegal arrest and an unlawful search and seizure without warrant of arrest or search warrant. After a hearing on the motion, it was denied without prejudice. The reasons given for the denial of the motion were that the judge who heard the motion was not fully advised of the evidence which the state intended to use in the trial of the cause, and further that the merits of the motion should be passed upon at the time of trial when any evidence sought to be suppressed was offered by the prosecution.

■ Appellant first contends that the court erred in refusing to pass upon the merits of the motion when it was argued and in denying the motion without prejudice. In support of his contention, appellant cites authorities for the well-established rule in this jurisdiction that if an accused knows, or by reasonably diligent investigation could have learned, that articles to be offered in evidence at his trial had been obtained by illegal search and seizure, he must within a reasonable time before trial move to suppress them and give the court *an opportunity* to try out that disputed question in advance. This is correct procedure for an accused in such a case.

■ However, it does not necesarily follow that the motion to suppress must be granted or denied prior to trial. The court before whom such a motion is presented may, in the exercise of its discretion, postpone the hearing, and, unless a clear abuse of discretion is shown, this court will not interfere. Because the motion did not specify exactly what evidence was sought to be suppressed, and for the other reasons stated by the court, we believe that sufficient cause appeared for postponing a final decision upon the motion until the time of trial.

Appellant seems to argue that the failure to rule upon the motion to suppress the evidence prior to trial was prejudicial because it allowed the trial judge to hear oral testimony of the witnesses on the subject, whereas a pretrial argument on the motion would ordinarily have been confined only to the supporting and controverting affidavits.

█ In this state, the court, when conducting a hearing on a motion to suppress evidence, may consider oral testimony in addition to, or in lieu of, affidavits.

In *State v. Therriault,* 168 Wash. 517, 12 P. (2d) 917, we said:

" 'While affidavits are ordinarily the only testimony received upon motions, it is competent for the court, in its discretion and in the furtherance of justice, to call the witnesses before it, and to have them examined and cross-examined in its presence. It is within the discretion of a court to take testimony orally for the determination of issues of fact arising upon motions, . . . .' 7 Bancroft's Code Practice and Remedies, § 5794, p. 7671."

There being no showing of any abuse of discretion on the part of the judge who declined in advance of the trial to rule upon the motion to suppress, we hold that the first assignment of error is without merit.

The motion to suppress the evidence was renewed at the appropriate time during the course of the trial. The trial judge excused the jury, heard testimony, and consulted the affidavits on this collateral matter. After taking the matter under advisement, he ruled that the arresting officers had information in their possession at the time of the arrest which was sufficient to establish probable cause and reasonable grounds for appellant's apprehension without a warrant, and denied the motion. Unless we find that this action was erroneous, the judgment and sentence must be affirmed, because the evidence was amply sufficient to support the verdict.

Assignments of error Nos. 2, 3, 4, 5, 7, 8, 9, and 10 will be discussed together, since they all involve one basic question: whether the trial court's denial of appellant's motion to suppress the evidence on the ground of illegal arrest and

the consequent illegality of any evidence, oral or physical, obtained by search or otherwise as a sequel thereto, was legally correct.

The additional facts necessary for a determination of this question are these: The Modern Auto Rebuild (as previously mentioned) had been twice burglarized. The testimony of investigating officers was that they had secured a description of two men who attempted to cash one of the checks stolen in the first burglary. One was said to be tall and very slender and walked stooped; the other, 5 feet 6 or 7 inches tall, weighed about 150 pounds, was unshaven and roughly dressed. One of the officers testified that these descriptions check "very closely" with those of Robert Geros and appellant. After the second burglary, Robert Geros and another man were named as suspects. The other man's car was left at the Modern Auto Rebuild, and two screw drivers were found under the seat. One had been stolen during the first burglary. The other one was bent as though it had been used "to pry something." It fitted the impression in the cash drawer which had been pried open. The officers were informed that Robert Geros had possession of the car at the time of the first burglary.

Later, two men were seen searching the car as if looking for something. Their descriptions, according to the sworn statement of one of the officers, matched those of appellant and Robert Geros, who were discovered to be living together. The investigating officers found that the two men were unemployed but were said to have quite a bit of money. They also were known to have had records of prior arrests.

On January 16, 1952, two officers went to the hotel where appellant and Robert Geros were living. They saw two men in the lobby waiting for the elevator and asked them if they were Green and Geros. On receiving an affirmative answer, the evidence shows that they "frisked" them for weapons and then suggested that they go up to their room to discuss something. Once there, the officers asked for identification and, after a few questions, placed the two men under arrest. They were then taken to police headquarters and booked "open for investigation of the burglary of

Modern Auto Rebuild." Both the arresting officers agreed on these details of the arrest.

Soon thereafter, the officers returned to the hotel room and searched it without a warrant. The results of this search will be discussed later in the opinion.

Another police detective testified that, following his arrest, appellant admitted participating in the second burglary of Modern Auto Rebuild. Appellant denied participating in either burglary. Whether or not appellant made such an admission following his arrest, cannot be considered in determining whether the arresting officers had reasonable grounds for the arrest of appellant.

Appellant's testimony at the collateral hearing differed from that of the officers in certain respects. He stated that the arresting officers did not identify themselves in the lobby, but that as soon as they arrived in the hotel room they asked both appellant and Robert Geros for their wallets. The officers then took out the money, counted it, remarked that it was a lot considering the men were not working, and then returned the wallets and money. Appellant further testified that one of the officers started to look into his bureau drawers, and only when appellant objected to the search without a warrant did he inform the two men that they were under arrest. Appellant testified that he was in jail at the time of the first burglary of Modern Auto Rebuild and was not released on bail until December 11, 1951.

■ The trial judge, who had before him the affidavits previously filed in support of, and in opposition to, the motion to suppress, and who listened to the testimony of the respective witnesses, was in the best position to determine the credibility of the witnesses and the weight to be given to their testimony in so far as it was in conflict. After examining the affidavits and testimony, we have come to the conclusion that his determination, that appellant's arrest was based upon reasonable grounds and, therefore, was legal even though made without a warrant, was correct.

In concluding its ruling on the motion to suppress, the trial court said:

"In the natural development of any case there is a stage where responsible law enforcement officers must act. They *cannot wait in every case* until they have in their hands a completely prepared case that proves a man guilty beyond reasonable doubt, before they file a charge or before they arrest. If they were required to do so, our whole system of law enforcement would break down.

"So here the test is not whether at that moment in the Ambassador Hotel at the time they made the arrest they *had enough evidence to make a complete case of proof of guilt.* The question is: Did they have enough information to make them honestly believe that there was probable cause and reasonable grounds connecting the defendant with the charge? After considering the testimony and the authorities, I believe they did have, and will overrule the objection and deny the motion to suppress."

█  The applicable rule of law was recently clearly expressed by this court in *State. v. Mason,* 41 Wn. (2d) 746, 252 P. (2d) 298, quoting with approval from *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841, as follows:

" ' . . . But in cases amounting to a felony, if the officer believe, and have good reason to believe, that a person has committed, or is about to commit, or is in the act of committing the crime, then he may arrest without a warrant. But the arresting officer must not only have a real belief of the guilt of the person about to be arrested, but such belief must be based upon reasonable grounds. Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. . . .

" 'It has always been held that a peace officer, when he makes a lawful arrest, may lawfully, without a search warrant, search the person arrested and take from him any evidence tending to prove the crime with which he is charged.' "

██  There being reasonable grounds for a belief that appellant was guilty of the burglary for which he was arrested, we hold that all exhibits obtained as a result of the search of appellant's person following the legal arrest, as well as his voluntary statement describing in detail the burglary of Huling Brothers, Inc., and all exhibits or evidence obtained as a result of his voluntary statements or actions in

assisting in their discovery, were properly admitted in evidence in this case. Evidence legally obtained may be used in the prosecution of the accused for a crime other than the one for which he was originally arrested. *State ex rel. Fong v. Superior Court*, 29 Wn. (2d) 601, 188 P. (2d) 125, and cases cited (certiorari denied 337 U. S. 956, 93 L. Ed. 1755, 69 S. Ct. 1525).

As a result of the search of appellant's room following his arrest, the officers discovered ten sticks of dynamite and a bag of mutilated coins. The dynamite was thrown into Puget Sound and was not offered as evidence at the trial. The coins were introduced as state's exhibits 6 and 6A. Appellant's running objection to the admission of this evidence was that it (the subsequent search) could not be lawful because the arrest was illegal.

The arrest, as we have decided earlier in this opinion, was legal. This court has previously upheld similar searches made without a warrant after an arrest and confinement. In *State v. Much*, 156 Wash. 403, 287 Pac. 57, such a search was held to be *incident* to a lawful arrest. Again in *State v. McCollum*, 17 Wn. (2d) 85, 136 P. (2d) 165, four members of a divided court upheld such a search on the same ground, while Judge Steinert and two other judges concurred in the result, stating that the admission of the pistol obtained as a result of the search was harmless error under the facts of that case.

We do not now wish to be understood as approving the actions of law enforcement officers in arresting and confining a suspect and then returning and searching his home without a warrant. In this case, we need not determine the legality of this search for the reason that the exhibits uncovered as a result thereof were merely cumulative.

Appellant's unsigned statement was admitted in evidence as state's exhibit No. 10. The officer who took the statement testified that appellant read it and admitted that it was correct but refused to sign it until he consulted his attorney. The statement described the burglary of Huling Brothers, Inc., and the theft of the money chest and appellant's first attempt to blow it open. It then continued:

"We drove out again in the country where Lou placed 10 sticks on the vault. This time the charge blew the safe open. It blew a good deal of the money all over. We realized between $1200 and $1300 in cash. We left some checks which were in the safe there. When we returned to Seattle we drove across the Floating Bridge. We split the money evenly in my room at the Ambassador. We also patched some of it which was blown apart with scotch tape."

State's exhibits Nos. 5, 13, 14, 15, 16, 17, and 18 consisted principally of mutilated coins and damaged currency, which were either taken from appellant at the time he was booked at police headquarters or were found at different times and places as a result of voluntary assistance given investigating officers by appellant or by Louis Wilson. These exhibits were properly admitted in evidence and were not in any way connected with the search of appellant's room following his arrest.

■ In light of the quoted portion of appellant's statement, in which he admitted to the investigating officers that he received one third of the stolen money, and the seven exhibits consisting chiefly of mutilated coins and damaged currency, we hold that exhibits 6 and 6A were merely cumulative and their admission could not have been prejudicial to appellant.

The remaining assignments of error have been covered by what has previously been said, because the evidence which was legally obtained as a result of appellant's lawful arrest and that discovered subsequently through his voluntary assistance was abundantly sufficient to support the verdict of the jury.

The judgment and sentence is affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.