THE STATE OF WASHINGTON, *Respondent*, v. CHARLES KUHN, *Appellant*.

*Ralph I. Thomas* (of *Stewart & Thomas, Inc., P.S.*), for appellant (appointed counsel for appeal).

*L. Edward Brown, Prosecuting Attorney*, and *Curtis M. Janhunen, Deputy*, for respondent.

ARMSTRONG, J.—The defendant, Charles Kuhn, appeals

from a judgment and sentence following revocation of probation under a deferred sentence.

The first impression issue on appeal is whether the exclusionary rules of the fourth amendment to the United States Constitution are applicable to a probation revocation hearing; specifically, whether the trial court erred in revoking defendant's deferred sentence by allowing into evidence various stolen items discovered in a warrantless search of defendant's apartment. We hold that the exclusionary rules are not applicable to a revocation of probation hearing.

The record shows that on April 30, 1971 defendant Kuhn pleaded guilty to the crimes of second-degree burglary and grand larceny. The judgment and sentence entered on his plea deferred the imposition of sentence for 3 years and granted him probation.

A petition to revoke the deferred sentence was subsequently filed on the basis of allegations that defendant had violated the terms of his probation by having been found guilty of a disorderly conduct charge, and on two occasions —July 6 and September 4, 1971—of having been found in possession of stolen property. A revocation of probation hearing was held on October 4, 1971. Regarding the July 6 charge, the investigating officer, Nels Sundstrom, testified that he gained entry to defendant's apartment with the aid of defendant's landlord. While searching the apartment the officer discovered miscellaneous food items and a radio allegedly taken from another tenant.

Officer James Schmid, of the Aberdeen Police Department, testified regarding a subsequent tour of defendant's apartment on September 4, 1971. As to this investigation, the record shows that defendant's sister was asked by defendant to remove his possessions from his apartment because he was behind in his rent. Defendant had given the key to his apartment to his sister and written permission to Officer Schmid to accompany her. On two occasions that day, other items of stolen property were found in defendant's apartment. Numerous witnesses testified to ownership of the items of property in question.

When the stolen radio obtained in the July 6 search of defendant's apartment was offered as evidence, defendant made no objection to the item being admitted. He contended that it was his own radio. He did object to the admission of numerous other items of stolen property.

We have set forth in the margin the trial court's oral opinion because we believe it clearly demonstrates the reasons for granting and revoking probation.[1]

Defendant contends that revocation of his probation upon the basis of illegally seized evidence on July 6 violated his right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments. In essence, he asks the court to extend the Fourth Amendment exclusionary rule to a probation revocation hearing. We decline this extension of the exclusionary rule.

■ Although Washington courts have yet to consider

---

[1]"Well, Mr. Kuhn, when you came before this Court on June 25th, 1971 for sentencing, having plead [sic] guilty to the crimes of second degree burglary and grand larceny, I decided to take a chance on you, despite the fact that the Board of Prison Terms and Paroles, in a vague sort of a way, finally recommended that you be sentenced to a state institution. Mr. Anderson, the probation and parole officer, felt that you weren't getting along too well in society, but he did think that you could make it if you went through the basic education training at Grays Harbor Community College. As a matter of fact, down to about the last paragraph that's really what he recommended, and then he turned right around and said that you would do better in a stricter situation, that is, a penal institution.

"Now we grant quite a few deferred sentences. Rightly or wrongly, we feel that a young man shouldn't be condemned for one mistake, and you didn't have any prior record, so to speak.

"Now we're criticized for granting deferred sentences, but I'll tell you something: very, very few of the young men we give deferred sentences ever come back in front of us, and as far as I am concerned, that means we're right in not sending you to a penitentiary and marking you for life.

"So I took a chance on you, and you let me down because, Mr. Kuhn, I don't believe you. I think you stole most, if not all, of these items. It's inconceivable to me that all of these witnesses could be wrong and you right. I had an open mind when I walked into this courtroom but I don't have an open mind now, so your deferred sentence is going to be revoked and I'm going to sentence you according to your plea of guilty on the two crimes to which you've previously plead [sic] guilty."

the propriety of extending the Fourth Amendment exclusionary rule to probation revocation proceedings, it is clear from our own decisions that the granting and the revocation of probationary status is a determination that rests almost exclusively with the trial judge. While it is true that the fundamental elements of fair play must be taken into account at a revocation of probation hearing, nonetheless, whether probation is granted or revoked rests in the sound discretion of the trial court. *State v. Riddell,* 75 Wn.2d 85, 449 P.2d 97 (1968).

The constitutional due process rights of a probationer at a revocation of probation hearing are not the same as those of one accused of a crime in the initial trial of his case. Because of his conviction and the order of the court under which he is at liberty, the probationer's rights are something less than he was entitled to receive before his conviction. Due process requires that he be represented by competent counsel; have adequate notice of the hearing and of the claimed violations of probation; an opportunity to cross-examine the state witnesses; and an opportunity to testify and to answer, rebut or explain away the claimed violations. When the probationer materially denies a significant matter, which is presented through hearsay and is otherwise unsupported, due process requires that the probationer be accorded the right to confront his accuser. *State v. Riddell, supra.*

Clearly, probationers are entitled to all of the basic constitutional rights, including protection from illegal searches and seizures, where the probationer is an accused in a criminal prosecution. *United States ex rel. Lombardino v. Heyd,* 318 F. Supp. 648 (E.D. La. 1970); *United States v. Hallman,* 365 F.2d 289, 291 (3d Cir. 1966); *cf. Martin v. United States,* 183 F.2d 436, 439 (4th Cir. 1950). However, the constitutional rights of an accused in a criminal prosecution and the rights of an offender in proceedings on revocation of conditional liberty under probation are not coextensive. *United States ex rel. Lombardino v. Heyd, supra; see State v. Riddell, supra.*

Although few cases have considered the subject, it has been held that the Fourth Amendment prohibition against the admission of illegally seized evidence is not applicable to a revocation of probation hearing. *United States ex rel. Lombardino v. Heyd, supra; People v. Hayko,* 7 Cal. App. 3d 604, 86 Cal. Rptr. 726 (1970). We believe that this rule is completely consistent with the rationale of probation hearings expressed in *State v. Shannon,* 60 Wn.2d 883, 376 P.2d 646 (1962), *State v. Riddell, supra,* and other cases from our jurisdiction.

Not only do we believe that the rule of this case is consistent with prior cases from this jurisdiction, but we are convinced that it is based upon sound public policy. The superior courts of our state have found from experience that probation should be utilized when feasible and that the results achieved under the careful use of probation far exceed the recidivism results from penal commitments.[2] We fear that extending search and seizure rules to probation hearings would discourage the wise and careful use of probation.

Probation is not granted out of a spirit of leniency. In granting or denying probation, the judge makes the delicate balance of protecting the rights of the public and providing for the rehabilitation of the offender. It has been

---

[2] A survey of adult felony convictions conducted by the Department of Social and Health Services, Division of Institutions for the period of July 1, 1963 through June 20, 1969 reveals 67.5 per cent of the 14,056 felony convictions reported to the Division of Institutions were initially granted probation.

Among those who violated probation, only 560 new felonies—5.9 per cent—were reported. Including technical violations with those involving new felonies we find that three out of ten probationers violated probation. Approximately half of those who violated probation were sentenced to penal institutions. During the same period of time, five out of ten persons sentenced to penal institutions violated parole and were returned to prison custody.

The extensive use of probation has resulted in saving millions of dollars that would otherwise have been spent keeping people in prison or building more prisons to house offenders. The saving in lives through rehabilitative probation services cannot be calculated because it continues from one generation to the next.

demonstrated that placing the offender under the close supervision of the probation service, in an appropriate case, is beneficial to the individual and to society, because society is best served by rehabilitating the offender. Supervision of the probationer implies continuous control of the court through the agency of the probation officer. The sentencing judge does not and should not relinquish control over the offender. Accordingly, when an offender fails on probation, the judge should not hesitate to revoke it for cause established in a fair hearing.

Expansion of the exclusionary rule to probation hearings would probably further its laudable purpose of deterring unconstitutional methods of law enforcement. But the good to be obtained from such expansion must be balanced against the harm which would result from lessening the necessary controls over probationers and the possibility of judges becoming reluctant to utilize this valuable tool of rehabilitation of offenders. The due process safeguards of a fair hearing spelled out in *State v. Riddell, supra,* and other cases from this jurisdiction, furnish adequate protection for the rights of probationers at a revocation of probation hearing.

At a revocation of probation hearing the court need not be furnished with evidence establishing beyond a reasonable doubt the guilt of the probationer of the alleged violations of probation. All that is required is that the evidence and the facts be such as to reasonably satisfy the court that the probationer is violating the terms of his probation or is engaging in criminal practices. *State v. Shannon, supra; State v. Leighty,* 5 Wn. App. 30, 485 P.2d 91 (1971). Due process was satisfied in the case at bar and the proof was overwhelming.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied August 1, 1972.

Review granted by the Supreme Court September 20, 1972.