[No. 975-2. Division Two. December 5, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. LUTHER SIMMS, *Appellant*.

*Edwin J. Wheeler* (of *Hutchins, Plumb & Wheeler*), for appellant.

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

ARMSTRONG, J.—This is an appeal from a judgment upon jury verdicts finding defendant guilty of two counts of possession of heroin, a controlled substance, and finding defendant to be an habitual criminal.

The defendant first contends that the trial court erred by admitting into evidence controlled substances obtained as the product of an unreasonable search and seizure. We hold that the evidence should have been excluded, and for that reason reverse the conviction.

The defendant also assigns as error the trial court's refusal to dismiss a supplemental information filed against him subsequent to the conviction for possession of the controlled substances which we hold were erroneously admitted into evidence. The supplemental information charged

the defendant with being an habitual criminal pursuant to RCW 9.92.090.[1] The felony convictions attributed to the defendant were a 1959 carnal knowledge conviction, a 1969 grand larceny conviction, and the conviction for possession of controlled substances which is reversed in this appeal. Because of our disposition of this latest conviction, it is unnecessary for us to discuss the defendant's assignments of error regarding the habitual criminal charge.

▉ We may begin our discussion regarding the admissibility of the evidence involved here by noting that when conducting a hearing on a motion to suppress evidence, the trial court may hear the matter entirely on affidavits, or has discretion to consider oral testimony in addition to, or in lieu of, affidavits. *State v. McLaughlin*, 74 Wn.2d 301, 303, 444 P.2d 699 (1968); *State v. Green*, 43 Wn.2d 102, 105, 260 P.2d 343 (1953). Of course the purpose of such a hearing is to give the trial court an opportunity to rule on the disputed question of whether the evidence was obtained in an unlawful manner. The hearing is conducted prior to the time the case is called for trial in order to allow the trial, once begun, to proceed in an orderly fashion to its conclusion without the necessity of stopping it to try collateral issues. *State v. Baxter*, 68 Wn.2d 416, 422, 413 P.2d 638 (1966); *State v. Robbins*, 37 Wn.2d 431, 224 P.2d 345 (1950).

▉ In this case, the record discloses that the only evidence before the trial court on the motion to suppress was an affidavit of the defendant, which the state accepted as being substantially true. The state elected to proceed solely on the affidavit of the defendant, and did not submit any affidavits or testimony in opposition. However, during argument on the motion, counsel for both the defendant and the

---

[1]RCW 9.92.090 provides, in part, as follows:

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, . . . shall be punished by imprisonment in the state penitentiary for life."

state agreed or stipulated to additional facts not contained in the defendant's affidavit, which facts we believe were properly considered by the trial court in attempting to determine whether the evidence was lawfully obtained. *See Baird v. Baird,* 6 Wn. App. 587, 589, 494 P.2d 1387 (1972).

The unchallenged affidavit of the defendant, and the facts clearly stipulated to between counsel, thus unfortunately constitute the entire record from which we must determine the legality of the method by which this evidence was obtained.

The following then, is a statement of the facts surrounding the seizure of the challenged evidence. On September 24, 1972, the defendant was present as a guest in the home of Edwina Cook, located at 1052 South 27th Street in Tacoma, Washington. Both the defendant and Edwina Cook were parolees. The defendant was in bed in a bedroom of the apartment with another woman when the front door of the premises was broken and forced open by several officers of the Tacoma Police Department, and Edwina Cook's parole officer, James Boyle. The officers searched throughout the house, and discovered items in the bedroom occupied by the defendant which were the basis of the prosecution against him.

At no time was a search warrant or warrant of arrest read or exhibited. Counsel for both parties clearly agreed that the officers were acting upon information supplied by an anonymous informant who related that the defendant was present at the Cook residence and was putting narcotics into balloons. Counsel did not agree as to whether the informant came to the police station and gave this information to the narcotics people, who, in order to circumvent the requirement of obtaining a search warrant, called Officer Boyle; or whether the parole officer and the narcotics squad were notified of the tip at the same time by uniformed field officers.

That the defendant has standing to challenge the admissibility of the evidence used against him in this case is not disputed. Although the apartment searched was not his

own, the defendant was legitimately present as a guest on the premises when the search occurred, and thus has standing to claim the constitutional protection from unreasonable searches and seizures. *Brown v. United States*, 411 U.S. 223, 36 L. Ed. 2d 208, 213, 93 S. Ct. 1565, 1568 (1973); *Jones v. United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960); *State v. Michaels*, 60 Wn.2d 638, 374 P.2d 989 (1962).

In assessing the admissibility of the challenged evidence obtained as a result of the search discussed above, we note that at issue here is the admissibility of evidence in a new criminal proceeding against the defendant, rather than merely a proceeding to revoke his parole. This is significant since this court has previously held that the Fourth Amendment prohibition against the admission of illegally seized evidence is not applicable in a revocation of probation hearing. *State v. Kuhn*, 7 Wn. App. 190, 194, 499 P.2d 49 (1972).[2] In that case it was unnecessary for us to decide whether a warrantless search of a probationer's apartment was lawful or not, for we held that the Fourth Amendment exclusionary rule is not applicable in a probation revocation hearing, and thus, even if the entry was unlawful, the evidence was admissible.

We point out that *Kuhn* involved a probationer rather than a parolee. However, like the United States Supreme Court, we do not perceive any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, and we conclude that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole. *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973).

In either case, a holding that the exclusionary rule does not apply in revocation hearings is compelled by a consideration that although extension of the exclusionary rule to

---

[2] Affirmed on other grounds in *State v. Kuhn*, 81 Wn.2d 648, 503 P.2d 1061 (1972). The Supreme Court did not reach the exclusionary rule question.

parole and probation revocation hearings might have a desirable deterrent effect upon illegal official conduct, any such incremental deterrence is more than outweighed by the social consequences that would result from imposing such an impediment to blind the court or agency from relevant facts when it must make the delicate decision as to when a convicted person can be allowed to return to and remain in society. *State v. Kuhn, supra; United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161 (2d Cir. 1970); *In re Martinez,* 1 Cal. 3d 641, 463 P.2d 734, 83 Cal. Rptr. 382 (1970).

The state has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if, in fact, the parolee has failed to abide by the conditions of his parole. For this reason the full panoply of rights due a defendant in a criminal proceeding does not apply to parole revocations. *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972).

It is therefore clear that if this case involved only the question of whether the evidence obtained in the Cook residence was admissible in a parole revocation hearing, the issue would be resolved in favor of admissibility.

However, the United States Supreme Court has pointed out that there are critical differences between criminal trials and probation or parole revocation hearings, which differences both society and the parolee or probationer have a stake in preserving:

> In a criminal trial, the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights which may be lost if not timely raised; and, in a jury trial, a defendant must make a presentation understandable to untrained jurors. In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation described above; formal procedures and rules of evidence are not employed; and the members of

the hearing body are familiar with the problems and practice of probation or parole.

*Gagnon v. Scarpelli, supra* at 789.

██ Whereas the inapplicability of the exclusionary rule made it unnecessary for us to determine whether the warrantless search in *State v. Kuhn, supra,* was lawful, because this case involves new criminal proceedings against defendant, we are squarely confronted with the question of whether the warrantless search by Parole Officer Boyle and the Tacoma police officers was a "lawful" search, and not afoul of the Fourth Amendment prohibition against unreasonable search and seizure. The law is well established in this state, consistent with the decisions of the United States Supreme Court, that in a *criminal prosecution,* evidence *unlawfully* seized will be excluded. *State v. Biloche,* 66 Wn.2d 325, 327, 402 P.2d 491 (1965).

██ Analyzing the reasonableness of the search in this case, we start with the proposition that subject only to a few exceptions, a residential search without a warrant is per se unreasonable under the Fourth Amendment, and that the burden is on those seeking an exception to the warrant requirement to establish the need for it. *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *State v. Sanders,* 8 Wn. App. 306, 309, 506 P.2d 892 (1973).

Here, the sole ground upon which the state seeks to justify the warrantless search is that Edwina Cook, whose residence was searched, was a parolee under the supervision of Parole Officer Boyle, one of the searching officers.[3] The contention of the state, broadly stated, is that a parolee, his home, and his effects may be subjected by his parole supervisors to such consistent or occasional inspections and searches as may appear advisable to the parole officer, without violating the constitutional prohibition

---

[3]The fact that the defendant was also a parolee is, of course, not determinative, since the legality of the search depends on a determination of whether the officers were acting "reasonably" when they entered the Cook residence.

against unreasonable search and seizure. The state argues that a search which would be unlawful if directed against an ordinary citizen may be proper if conducted against a parolee. In support of this contention, the state cites *People v. Hernandez,* 229 Cal. App. 2d 143, 40 Cal. Rptr. 100 (1964), *cert. denied,* 381 U.S. 953, 14 L. Ed. 2d 725, 85 S. Ct. 1810 (1965), and *United States ex rel. Santos v. New York State Board of Parole,* 441 F.2d 1216 (2d Cir. 1971), *cert. denied,* 404 U.S. 1025, 30 L. Ed. 2d 676, 92 S. Ct. 692 (1972). The state further contends that the information relied upon by a parole officer to enter and search a parolee's residence need not reach the level of "probable cause" otherwise generally required as to nonparolees under the Fourth Amendment. *United States ex rel. Randazzo v. Follette,* 282 F. Supp. 10 (S.D.N.Y. 1968), *aff'd,* 418 F.2d 1319 (2d Cir. 1969), *cert. denied,* 402 U.S. 984, 29 L. Ed. 2d 150, 91 S. Ct. 1672 (1971).

The rationale for excepting parolees and probationers from the general requirement that a residential search be conducted pursuant to a warrant and upon probable cause, is that a person judicially sentenced to confinement but released on parole remains in custodia legis until expiration of the maximum term of his sentence, *i.e.,* he is simply serving his time outside the prison walls. In support of this contention the state cites *January v. Porter,* 75 Wn.2d 768, 453 P.2d 876 (1969), wherein it was held that the courts are without power to grant bail to a convicted prisoner on parole who is arrested and held in custody for a violation of the terms and conditions of his parole. The court noted in *January* that a person may, as a privilege and not as a right, be conditionally released on parole, and that the legal custody of a person so released remains in the executive branch of government until the expiration of the entire sentence.

Because of the in custodia legis status of the parolee, it follows, the state argues, that the warrantless search in this case, based upon the tip of an anonymous informer, was not

a prohibited unreasonable search. The evidence obtained as a result of the search would therefore be admissible.

In marked contrast to the position urged by the state, which is based upon the "special status" of the parolee as a prisoner serving his time outside the prison walls, we note that the Iowa Supreme Court in a recent decision refused to dilute the Fourth Amendment protection extended to parolees on the ground that such an approach was not "constitutionally sound, reasonable, fair or necessary." That court went on to conclude as follows:

> Confining ourselves to seizure of evidence relative to a new and independent criminal action, we believe it fairer and far more realistic that an Iowa State parolee's Fourth Amendment rights, privileges and immunities, be accorded the same recognition as any other person. In fact there is to us no apparent constitutionally adequate or permissible basis upon which to hold otherwise.

*State v. Cullison,* 173 N.W.2d 533, 537 (Iowa 1970), *cert. denied,* 398 U.S. 938, 26 L. Ed. 2d 270, 90 S. Ct. 1841 (1970); *see also United States v. Hallman,* 365 F.2d 289 (3d Cir. 1966); *Brown v. Kearney,* 355 F.2d 199 (5th Cir. 1966).

We are of the opinion that the "proverbial middle ground" is more logical and constitutionally persuasive. For example in *Morrissey v. Brewer, supra,* the United States Supreme Court noted that it had rejected the concept that constitutional rights depend upon a characterization of a particular interest as a "right" or a "privilege," holding that by whatever name, the liberty of a parolee is valuable, and must be seen as within the protection of the Fourteenth Amendment. The court stated "Once it is determined that due process applies, the question remains what process is due." That question requires a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. *Morrissey v. Brewer, supra* at 481.

At this point the Supreme Court's examination of the nature of the interest of the parolee in his continued liberty

is particularly apposite, and is set forth at some length below:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

(Footnotes omitted.) *Morrissey v. Brewer,* 408 U.S. 471, 482, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972).

■ Considering the interest of the parolee in his liberty and privacy, it would seem to be beyond question that to subject the parolee to arbitrary and capricious searches at the whim of his parole officer would be constitutionally impermissible. The Fourth Amendment protection against unreasonable searches and seizures *does* extend to one released on parole, and searches by parole officers pursuant to their duties, like other administrative searches,[4] are subject to this broad reasonableness requirement. *United States v. Hallman, supra; Brown v. Kearney, supra; Martin v. United States,* 183 F.2d 436 (4th Cir. 1950), *cert. denied,* 340 U.S. 904, 95 L. Ed. 654, 71 S. Ct. 280 (1950). It is unreasonableness which is condemned in the Fourth Amendment. *Terry v. Ohio,* 392 U.S. 1, 9, 20 L. Ed. 2d 889, 899, 88 S. Ct. 1868, 1873 (1968).

In determining whether a search is "unreasonable," the

---

[4]*See Camara v. Municipal Court,* 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967); *Wyman v. James,* 400 U.S. 309, 27 L. Ed. 2d 408, 91 S. Ct. 381 (1971).

parolee's status obviously must be considered as an important factor. *Martin v. United States, supra.* For example, to minimize the social risks inherent in parole, an acceptable parole system does necessarily entail a certain degree of close supervision, surveillance, and control over the parolee. *United States ex rel. Santos v. New York State Board of Parole, supra; People v. Hernandez, supra.*

As we indicated previously, searches without a valid warrant, like the search involved here, are generally "unreasonable" per se unless it is demonstrated that public interest justifies creation of an exception to the general warrant requirement. It has been repeatedly stated that the reason for requiring a warrant, even if there is probable cause to search, is so that the determination is made "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 14, 92 L. Ed. 436, 440, 68 S. Ct. 367, 369 (1948).

Because of the nature of the parolee's status, discussed above, and because of the rehabilitative rather than punitive nature of the role of the probation and parole officer, noted in *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973), a search by a parole officer pursuant to his supervisory duties can be distinguished from that of the police officer competitively "ferreting out crime." We are therefore satisfied that it is constitutionally permissible for a probation or parole officer, *when reasonable,* to search a parolee, his effects, and his home without first obtaining a search warrant.

 ■ The view has also been advanced that because of the status of the parolee, his justifiable expectation of privacy is diminished, and thus some intrusions by parole officers may be deemed "reasonable" even when the information relied upon by the parole officers does not reach the traditional level of "probable cause." *United States ex rel. Santos v. New York State Board of Parole, supra; United States ex rel. Randazzo v. Follette, supra.* We are of the opinion that there may be circumstances where a search of a

parolee on less than probable cause is constitutionally acceptable, but we agree with the California Supreme Court that a diminution of Fourth Amendment protection can only be justified "to the extent actually necessitated by the legitimate demands of the operation of the parole process." *In re Martinez,* 1 Cal. 3d 641, 646, 463 P.2d 734, 738, 83 Cal. Rptr. 382, 386 n.6 (1970).

■ Of course if the parole officer is justified in making a search, he may enlist the aid of police officers in performing his duty.[5] *See People v. Limon,* 255 Cal. App. 2d 519, 63 Cal. Rptr. 91 (1967); *People v. Quilon,* 245 Cal. App. 2d 624, 54 Cal. Rptr. 294 (1966).

■ In this case there can be no question but that the officers engaging in the search of the Cook residence lacked "probable cause" to believe contraband was present. In *State v. Chatmon,* 9 Wn. App. 741, 745, 515 P.2d 530 (1973), we recently reviewed the two-pronged test for determining whether an informant's tip constitutes probable cause. We noted in *Chatmon* that:

[T]he test requires that there appear some underlying circumstances from which the informant concluded that the contraband was where he claimed it to be, and some further circumstances from which the officer could conclude that the informant was "reliable." *Aguilar v.*

[5] *But cf. People v. Coffman,* 2 Cal. App. 3d 681, 689, 82 Cal. Rptr. 782, 786 (1970), wherein the California Appellate Court refused to uphold a search of a parolee by police accompanied by a parole officer on the following grounds:

The parole agent was not engaged in administering his supervisorial function. He had not instigated the search nor evinced any official interest in it except in his role as a "front" for the police. His presence was a ruse, calculated to supply color of legality to a warrantless entry of a private dwelling. The Fourth Amendment hardly lends itself to such totemism. The search was primarily aimed at ordinary law enforcement, not parole administration. Law enforcement searches are heartily to be encouraged, but by means sanctioned by the Constitution. . . . They chose the parole agent rather than a search warrant as their ticket of entry to the apartment. The search was illegal and its evidentiary products inadmissible.

(Footnote omitted.) *See also United States v. Hallman,* 365 F.2d 289 (3d Cir. 1966).

*Texas,* 378 U.S. at 114. *See also Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

*State v. Chatmon, supra* at 745.

In this case there is nothing in the record disclosing the facts or circumstances from which the informant here concluded that there would be controlled substances in the Cook residence. Furthermore, there is absolutely no evidence whatsoever indicating that the "tip" came from a "reliable" informant. The only thing that can be said about the informant here is that he was "anonymous."

Although we are of the opinion that a warrantless search of a parolee's residence may be conducted upon something less than traditional probable cause, the parole officer must nonetheless have some valid reason to believe that a parole violation has occurred. In attempting to delineate the circumstances in which such a warrantless search may be permissible, a helpful analogy may be made to the "stop and frisk" or "investigative detention" doctrine of *Terry v. Ohio, supra,* and *Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972). That doctrine allows a brief detention and limited inquiry by police officers on less than probable cause. The test in these cases has been construed to require the police to have a "well founded suspicion of criminal activity." *State v. Chatmon, supra; State v. Gluck,* 7 Wn. App. 811, 813, 502 P.2d 1222 (1972).

We note that both *Terry v. Ohio, supra,* and *State v. Gluck, supra,* involved direct observations by police officers of suspicious behavior. However, in *Adams v. Williams, supra,* the court specifically rejected the argument that the *Terry* doctrine applied only when based on the officers' personal observation, rather than on information supplied by another person. The court stated:

> Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized.

*Adams v. Williams, supra* at 147. The court in the *Williams* case clearly pointed out that although the informant's unverified tip there may have been insufficient for an arrest or search warrant; a forcible stop and limited weapons search was justified because the information carried enough "indicia of reliability." The court was also careful to point out that the officer acted justifiably in that he was responding to the tip of an informant who was known to the officer personally, and who had provided the officer with information in the past, rather than a mere anonymous tip.

 We believe that a similar standard or test should be applied to determine whether the warrantless search of a parolee is reasonable. We are convinced the Fourth Amendment requires, as a minimum, that before a parole officer may forcibly enter the residence of a parolee without a warrant, upon the tip of an informer, the information upon which the officer acts must at least carry some indicia of reliability to support an inference that the informant is telling the truth. In short, the officer must at least have a well founded suspicion that a parole violation has occurred.

We do not feel that the legitimate demands of the parole process would be unduly frustrated by the requirement that before a parole officer may intrude into the home of a parolee, he must make some attempt to ascertain that he is acting on something more than casual rumor, general reputation, or a mere whim. It is therefore our holding that the forcible entry of the Cook residence by Parole Officer Boyle and members of the Tacoma Police Department was "unreasonable" and prohibited by the Fourth Amendment. From this it follows that the evidence obtained as a result of the unlawful entry and subsequent search should have been excluded by the trial court.

Reversed.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied January 10, 1974.

Review denied by Supreme Court February 15, 1974.