178 N.J. Super. 216 (1981)
428 A.2d 564
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH EMANUEL NUNZIATO, DEFENDANT.
Superior Court of New Jersey, Law Division Ocean County.
Decided January 30, 1981.
*217 Steven N. Cucci, Assistant Prosecutor, Ocean County, for plaintiff.
Robert A. Coogan for defendant.
ADDISON, J.S.C.
The issue raised by this motion to suppress is whether stolen merchandise found in the home of a prisoner on work release by his work release supervisor, in the prisoner's presence, can be received in evidence against him in a subsequent prosecution.
On April 14, 1980 defendant was sentenced in an unrelated matter to 364 days in the Ocean County Jail with four months suspended, given two years' subsequent probation and fined $1,000. While incarcerated he was placed in a work release program and permitted employment in the family business in Bricktown. As a condition of work release he was permitted his mid-day meal at his home one block away.
During July 1980 it came to the attention of Martin Corbo, Ocean County Sheriff's officer and defendant's work release supervisor, that certain stolen property was allegedly situated in the garage attached to defendant's home. That information was provided by Sergeant Meyers of the Sheriff's Office from an informant not known to Corbo to be reliable.
*218 Thereupon Corbo went to defendant's place of employment. That officer had not previously examined either defendant's place of employment or his residence and took this occasion to make those inspections. Corbo asked that defendant be called so that they might confer, and then accompanied defendant's wife to their home where he waited outside until defendant arrived.
When defendant appeared they entered the dwelling together and went to the attached garage where 15 skylights, subsequently determined to be stolen property, were observed. Corbo testified that defendant voluntarily granted him permission to enter the garage. Defendant denied it.
There are no reported cases in this State on point. Such decisions as exist appear to deal only with the rights of parolees, a situation not analogous here. The status of a parolee is well described in State v. Simms, 10 Wash. App. 75, 516 P.2d 1088 (App.Ct. 1974):
... The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to any restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. [Emphasis supplied].
The status of a prisoner granted work release privileges is otherwise. Rules surround such persons with numerous restrictions. He is not permitted mail communication except through the Sheriff's Office, any social visits while outside jail on work release, taking out or carrying into jail unauthorized items, consumption of any alcoholic beverages while on work release, or leaving his place of employment except as a condition of that employment. He must permit body searches both on exiting and reentering jail each day, not use or secure drugs or prohibited medication while on work release, and obviously, not involve himself in criminal activity while outside the physical confines of the institution to which he has been committed.
*219 The federal Circuit Courts of Appeal are of two minds on the subject of warrantless searches of parolees or probationers. United States v. Bradley, 571 F.2d 787 (4 Cir.1978), and United States v. Workman, 585 F.2d 1205 (4 Cir.1978), essentially hold that although a parolee or probationer may agree as a condition of his release from incarceration to allow his supervising officer to visit his home and place of employment, that status does not automatically authorize warrantless searches of those areas by such officers.
On the other hand, U.S. ex rel. Santos v. N.Y. State Board of Parole, 411 F.2d 1216 (2 Cir.1971), cert. den. 404 U.S. 1025, 92 S.Ct. 692, 30 L.Ed.2d 676 (1972), and Latta v. Fitzharris, 521 F.2d 246 (9 Cir.), cert. den. 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), stand for the proposition that a parolee has a lesser expectation of privacy than other citizens. The standard to be applied is reasonableness of the search. These courts hold that a parolee remains in constructive custody. In Latta, the court stated:
... A California parolee is in a different position from that of the ordinary citizen. He is still serving his sentence. (Emphasis supplied). He remains under the ultimate control of his parole officer. His parole is subject to revocation for reasons that would not permit the arrest or incarceration of other persons. [at 249]
The court continued:
... We think that one of these restrictions, necessary to the effective operation of the parole system, is that the parolee and his home are subject to search by the parole officer when the officer reasonably believes that such search is necessary in the performance of his duties. The parole officer ought to know more about the parolee than anyone else but his family. He is therefore in a better position than anyone else to decide whether a search is necessary. His decision may be based upon specific facts, though they be less than sufficient to sustain a finding of probable cause. [at 250]
There is a marked contrast between the status of a parolee released from custody and a person serving a custodial sentence. A prisoner's expectation of privacy while serving his sentence is obviously far less than that of a parolee. His status as a prisoner continues wherever he may be and whatever he may be doing while serving his sentence. A prisoner on work *220 release is at all times surrounded by the invisible bars of his cell, even though he may be provisionally permitted to visit his own home. In such case Fourth Amendment rights give way to the test of reasonableness.
I therefore find that the entry into defendant's garage by Officer Corbo was reasonable and not violative of defendant's Fourth Amendment rights. Under these circumstances the defendant's consent was not necessary as a condition precedent therefor.
The motion to suppress is denied.