# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| STATE OF WASHINGTON, | No. 46886-7 |
|---|---|
| Appellant, | |
| v. | PUBLISHED OPINION |
| BRITTANIE J. OLSEN, | |
| Respondent. | |

MAXA, J. – The State appeals the superior court's decision to vacate a provision of Brittanie Olsen's district court sentence requiring her to submit to random urinalysis screens (UAs) as a condition of her misdemeanor probation. The superior court found that a random UA would be an unconstitutional search because it could be required without a well-founded suspicion of a probation violation.

We hold that (1) the district court had the authority, pursuant to RCW 3.66.067 and RCW 46.61.5055,[1] to impose random UAs as a condition of Olsen's misdemeanor probation, (2) the random UA probation condition does not violate article I, section 7 of the Washington Constitution for an offender on probation for driving under the influence (DUI) because a DUI probationer does not have a privacy interest in preventing the use of his or her urine to ensure

---

[1] RCW 46.61.5055 has been revised three times since Olsen was arrested in May 2014. LAWS OF 2015, ch 3, § 9; LAWS OF 2015, ch. 265, § 33; LAWS OF 2014, ch. 100, § 1. However, these amendments have not substantively altered RCW 46.61.5055(5)(b), on which we primarily rely.

compliance with a probation condition prohibiting the consumption of alcohol, marijuana, or non-prescribed drugs. Accordingly, we reverse the superior court.

## FACTS

In June 2014, Olsen pleaded guilty to driving under the influence. The district court imposed a sentence of 364 days, with 334 days suspended.

As a condition of Olsen's suspended sentence and probation, the district court ordered that she could not consume alcohol, marijuana, or non-prescribed drugs, and that "random urine analysis screens will be used to ensure compliance with conditions regarding the consumption of alcohol and controlled substances." Clerk's Papers (CP) at 5. Olsen objected to the condition and requested that the district court strike it from Olsen's sentence. The district court disregarded Olsen's request to strike the condition.

Olsen appealed to the superior court, which vacated Olsen's sentence and ordered the district court to resentence Olsen without the random UA condition. The State appeals.

## ANALYSIS

A. DISTRICT COURT SENTENCING AUTHORITY

The State argues that the district court has authority to impose a random UA probation condition under RCW 3.66.067 and RCW 46.61.5055 for a misdemeanor sentence.[2] We agree.

Under RCW 3.66.067, a district court may place a defendant on probation and "prescribe the conditions thereof." Based on this authority, a district court has broad discretion to impose probation conditions. *State v. Deskins*, 180 Wn.2d 68, 78, 322 P.3d 780 (2014). This discretion

---

[2] Because this case involves a sentence for a misdemeanor conviction rather than a felony conviction, the Sentencing Reform Act of 1981, chapter 9.94A RCW, does not apply.

includes the imposition of conditions tending to prevent the future commission of crimes. *Id.* at 77.

Enforcing a prohibition of alcohol, marijuana, or non-prescribed drug consumption through random UAs would tend to prevent the commission of alcohol-related or drug-related crimes. Given a district court's broad discretion to impose probation conditions, we hold that a district court has statutory authority under RCW 3.66.067 to impose a probation condition that requires random UAs to monitor compliance with a condition prohibiting the consumption of alcohol, marijuana, or non-prescribed drugs.

In addition, RCW 46.61.5055 applies specifically to probation conditions for alcohol and drug violators. RCW 46.61.5055(5)(b) states:

> If the court orders that a person refrain from consuming any alcohol, the court may order the person to submit to alcohol monitoring through an alcohol detection breathalyzer device, transdermal sensor device, *or other technology designed to detect alcohol in a person's system.*

(Emphasis added.) UAs are "designed to detect alcohol in a person's system" as allowed in this provision. Further, this provision does not expressly require some particularized reason for ordering a UA. The methods specifically listed – breathalyzer and transdermal devices – may involve random testing. Therefore, under the plain statutory language, a district court has authority under RCW 46.61.5055(5)(b) to order random UAs.

RCW 46.61.5055(11) also states:

> The court may impose conditions of probation that include nonrepetition, installation of an ignition interlock device on the probationer's motor vehicle, alcohol or drug treatment, supervised probation, *or other conditions that may be appropriate.*

3

(Emphasis added.) Random UAs monitoring for alcohol, marijuana, or non-prescribed drug use fall under the "other conditions that may be appropriate" catchall provision in RCW 46.61.5055(11).

Accordingly, we hold that the statutory language of RCW 3.66.067 and RCW 46.61.5055(5) and (11) provided the district court with the authority to impose Olsen's random UA probation condition.

B. CONSTITUTIONALITY OF RANDOM UAs FOR DUI PROBATIONERS

Olsen argues that even if the district court had statutory authority to impose the random UA condition, enforcement of that condition would violate her right to remain free from searches not authorized by law under article I, section 7 of the Washington Constitution. We disagree.

1. Prohibition Against Warrantless Searches

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Similarly, article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Our Supreme Court has recognized that article I, section 7 may provide greater protection to an individual's right of privacy than the Fourth Amendment under some circumstances. *See State v. Meneese*, 174 Wn.2d 937, 946, 282 P.3d 83 (2012). The State concedes that article I, section 7 provides broader protection here, and therefore we analyze this

No. 46886-7-II

issue under that provision.[3]  We review questions of constitutional construction de novo.  *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 302, 178 P.3d 995 (2008).

The threshold question under article I, section 7 is whether the challenged action constitutes a disturbance of a person's private affairs.  *State v. Surge*, 160 Wn.2d 65, 71, 156 P.3d 208 (2007).  The collecting and testing of a person's urine generally constitutes a disturbance of a person's private affairs and is a search.  *See, e.g.*, *York*, 163 Wn.2d at 307;[4] *State v. Rose*, 146 Wn. App. 439, 455, 191 P.3d 83 (2008); *Robinson v. City of Seattle*, 102 Wn. App. 795, 812, 10 P.3d 452 (2000).

Washington courts have held in several cases that suspicionless UA testing is an unconstitutional search.  In *York*, the Supreme Court held that article I, section 7 prohibits suspicionless, random UA testing of public school athletes.  163 Wn.2d at 316.  In *Rose*, this court held that article I, section 7 prohibits suspicionless, weekly UA testing of criminal defendants released from custody before trial.  146 Wn. App. at 455-58.  In *Robinson*, Division One of this court held that article I, section 7 prohibits pre-employment UA testing for positions that do not directly implicate public safety.  102 Wn. App. at 828.  However, none of these cases involved a person on probation after being convicted of DUI.

---

[3] Neither party has suggested that we should perform an analysis under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986) to determine whether article 1, section 7 provides broader protection than the Fourth Amendment under the specific facts of this case.

[4] *York* involved a lead opinion joined by three justices, a concurring opinion by Justice Madsen joined by three other justices, and a concurring opinion by Justice J.M. Johnson.  163 Wn.2d at 316, 329.  Justice Madsen's opinion agreed with the lead opinion that there is a strong privacy interest in excretory functions.  *Id.* at 327 (Madsen, J., concurring).  Justice J.M. Johnson also agreed that requiring a urinalysis test is a significant invasion of privacy.  *Id.* at 334 (J.M. Johnson, J., concurring).

No. 46886-7-II

The issue here is whether suspicionless, random UA testing violates article I, section 7 for an offender on district court probation for a DUI conviction.

2. Searches of Probationers

Probationers have a diminished right of privacy under article I, section 7. *E.g.*, *State v. Jardinez*, 184 Wn. App. 518, 523, 338 P.3d 292 (2014); *State v. Lucas*, 56 Wn. App. 236, 240, 783 P.2d 121 (1989). Probationers have diminished privacy rights because they are serving the sentence for their crimes and remain in the custody of the law even though they have been released from confinement. *State v. Reichert*, 158 Wn. App. 374, 386, 242 P.3d 44 (2010). Therefore, the State may supervise a probationer closely. *Jardinez*, 184 Wn. App. at 523.

Because of their diminished privacy rights, probationers may be subject to warrantless searches of their person and property as part of the legitimate operation of the probation process. *Jardinez*, 184 Wn. App. at 523. In general, a warrantless search of a probationer is constitutional if that search is reasonable. *State v. Simms*, 10 Wn. App. 75, 84, 516 P.2d 1088 (1973); *see also State v. Campbell*, 103 Wn.2d 1, 22, 691 P.2d 929 (1984). This court recognized in *Simms* that a probation officer need not have traditional probable cause in order to conduct a constitutionally permissible warrantless search of a probationer. 10 Wn. App. at 85-86. Instead, the test for a constitutional search is whether a probation officer has a "well founded suspicion" that a parole violation has occurred. *Id.* at 88.

6

*Simms* addressed only the Fourth Amendment. *Id.* However, subsequent cases have applied the "well founded suspicion" requirement under article I, section 7.[5] *E.g.*, *Lucas*, 56 Wn. App. at 243-44; *State v. Patterson*, 51 Wn. App. 202, 205, 752 P.2d 945 (1988).

3. DUI Probationers' Privacy Interest in Bodily Functions

Olsen argues that probationers retain a reasonable expectation of privacy in their bodily functions despite their diminished right to privacy. We hold that offenders on probation for DUI convictions do not have a privacy interest in preventing the random collection and testing of their urine when used to insure compliance with a probation condition prohibiting the consumption of alcohol, marijuana, and/or non-prescribed drugs. Therefore, the "well founded suspicion" requirement is inapplicable here.

A person generally has a privacy interest in his or her bodily functions, including control of urine. *York*, 163 Wn.2d at 307. However, "a person's privacy rights under article I, section 7 may vary based on that person's status as an arrestee, pretrial detainee, prisoner, or probationer." *Surge*, 160 Wn.2d at 74. The court in *Surge* emphasized that there is a difference between the privacy interests of "ordinary citizens" and the privacy interests of convicted felons. 160 Wn.2d at 72. "[A] citizen does lose some expectation of privacy by the fact of conviction and incarceration." *Id.* at 75. The issue here is whether a DUI probationer, who is legally in the

---

[5] The legislature codified an exception to the warrant requirement for felony offenders sentenced under the Sentencing Reform Act. RCW 9.94A.631(1) provides that a community corrections officer may require an offender to submit to a search of his person or property "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence." Courts have construed the term "reasonable cause" under RCW 9.94A.631(1) as requiring a well founded suspicion that a violation has occurred. *Jardinez*, 184 Wn. App. at 524; *see also State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009).

7

State's custody because of a DUI conviction, loses the "ordinary" privacy interest in the control of his or her urine.

The Supreme Court addressed a similar issue in *In re Juveniles A, B, C, D, E*, 121 Wn.2d 80, 847 P.2d 455 (1993). In that case, the superior court commissioner ordered five juveniles found to have committed sexual offenses under RCW 9A.44 to submit to human immunodeficiency virus (HIV) tests. *Id.* at 84-85. The juvenile offenders argued that taking a blood sample for an HIV test violated constitutional prohibitions against unreasonable searches and seizures under the Fourth Amendment and article I, section 7. *Id.* at 90.

The court analyzed the reasonableness of the search under the special needs doctrine. *Id.* at 91. In this context, the court noted that the constitutional rights of convicted offenders are subject to substantial limitations and restrictions. *Id.* at 92. The court further stated that sexual offenders' expectation of privacy is even less because of the nature of their crime: "For sexual offenders in particular, their expectation of privacy in bodily fluids is greatly diminished because *they have engaged in a class of criminal behavior* which presents the potential of exposing others to the AIDS virus." *Id.* at 92-93 (emphasis added). The court quoted with approval a commentator's statement that because AIDS can be transmitted through sexual contact, a sexual offender should reasonably expect that his or her blood will be tested for the virus. *Id.* at 93.

In *Surge*, the Supreme Court addressed the constitutionality of a statute that authorized the collection of deoxyribonucleic acid (DNA) from persons convicted of felonies and certain gross misdemeanors. 160 Wn.2d at 69-71. The court began by determining whether collecting DNA was a disturbance of a person's private affairs, noting that if there is no such disturbance, there is no article 1, section 7 violation. *Id.* at 71. The court concluded that a person convicted

of a felony does not have a privacy interest in the collection his or her DNA, at least if its use was limited to identification purposes. 160 Wn.2d at 74. The court stated that a convicted felon is not "entitled to hold" such a privacy interest. *Id.*

Here, Olsen was convicted of DUI. She was sentenced to 364 days in jail, but was allowed to serve 334 days of that sentence on probation. While on probation, she remained under custody of the law. *Reichert*, 158 Wn. App. at 386. As someone serving a criminal sentence under legal custody, she had a greatly diminished expectation of privacy in general.

Further, the nature of Olsen's crime eliminated any specific privacy interest she had in preventing the collection and use of her urine to enforce a prohibition of the consumption of alcohol, marijuana, and non-prescribed drugs. Olsen "engaged in a class of criminal behavior" that involved the abuse of alcohol. *Juveniles*, 121 Wn.2d at 93. As in *Juveniles*, a person convicted of a DUI should know that he or she will be prohibited from consuming alcohol, marijuana, or non-prescribed drugs and that the normal method of assuring compliance is through random UAs. *See State v. Acevedo*, 159 Wn. App. 221, 231-34, 248 P.3d 526 (2010); *State v. Vant*, 145 Wn. App. 592, 603-04, 186 P.3d 1149 (2008) (both approving random UAs to monitor compliance with community custody conditions imposed under the Sentencing Reform Act of 1981).

Because of Olsen's conviction involving the abuse of alcohol, she is not "entitled to hold" a privacy interest in the use of her urine. *Surge*, 160 Wn.2d at 74. As in *Surge*, the fact that Olsen was convicted of DUI meant that she had no privacy interest in the use of her urine if limited to monitoring her consumption of alcohol, marijuana, and non-prescribed drugs.

9

We hold that Olsen, as a person in legal custody serving her sentence for DUI on probation, did not have a privacy interest in preventing the use of her urine to ensure compliance with a probation condition prohibiting the consumption of alcohol, marijuana, or non-prescribed drugs.

We reverse the superior court.

_____
MAXA, J.


We concur:

_____
BJORGEN, C.J.

_____
SUTTON, J.