933 P.2d 1076 (1997)
85 Wash.App. 557
The STATE of Washington, Respondent,
v.
Beverly E. HARLOW, Petitioner.
No. 15219-7-III.
Court of Appeals of Washington, Division 3, Panel Seven.
April 3, 1997.
*1077 Kelli K. Armstrong, Okanogan, for Petitioner.
Karen C. Calhoun-Wells, Deputy Prosecuting Attorney, Okanogan, for Respondent.
SCHULTHEIS, Acting Chief Judge.
Omak Police Officer Andrew Ditzel kept a list of city residents who were believed to have suspended drivers' licenses. Officer Ditzel stopped Beverly Harlow when he saw her driving and remembered her name was on the list. She was arrested and booked into jail for driving while her license was suspended. Her motion to dismiss the citation was denied and she appeals, contending the maintenance of a suspended licenses list is an unconstitutional search and an unreasonable invasion of her private affairs. We affirm.
When Officer Ditzel began training as a police officer, his trainer, Officer Mike Marshall, was keeping a list of people who had suspended licenses. These were people Officer Marshall had personally cited for driving with suspended licenses. Officer Marshall gave the list to Officer Ditzel, who maintained the list by checking the names every week and adding new names as he cited drivers himself. According to Officer Ditzel, he and Officer Marshall knew on sight each of the approximately 55 people on the list.
On February 16, 1995, Officer Ditzel saw Ms. Harlow driving. He had run a check on his list of suspended licenses the day before, and knew she was probably driving without a valid license. Ms. Harlow pulled into her driveway just as Officer Ditzel recognized her. He pulled in behind her and asked her to get back in her car while he ran a driver's check. When dispatch confirmed that she still had a suspended license, he arrested her.
Ms. Harlow was charged in district court with third degree driving while license suspended. RCW 46.20.021. Before trial, she moved to dismiss for lack of reasonable grounds to stop and detain her.[1] The trial court applied Article I, Section 7 of the Washington Constitution and found that there is, at best, only a limited expectation of privacy in a driver's licensing record. The court also found that Officer Ditzel had prior knowledge, recently confirmed, that Ms.
*1078 Harlow had a suspended license, and that this information was not obtained on a "fishing expedition." Accordingly, the court decided the officer had an articulable suspicion of illegal conduct that justified the stop and check of Ms. Harlow's driving status. The Superior Court of Okanogan County affirmed. We granted Ms. Harlow's motion for discretionary review.
Ms. Harlow contends both Article I, Section 7 of the Washington Constitution and the Fourth Amendment of the United States Constitution provide protection against police maintenance of a suspended licenses list. She argues the list and the weekly checks of the drivers' records constitute warrantless searches and invasions of privacy.
When a defendant alleges violations of rights under both the state and the federal constitutions, this court first independently interprets and applies the state constitution. State v. Young, 123 Wash.2d 173, 178, 867 P.2d 593 (1994). The Washington State Constitution may provide greater protection than the federal constitution. Id. at 179, 867 P.2d 593. To determine whether Article I, Section 7 provides greater protection here, it is necessary to apply an analysis of the six nonexclusive factors of State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Young, 123 Wash.2d at 179, 867 P.2d 593; State v. Boland, 115 Wash.2d 571, 575, 800 P.2d 1112 (1990). Briefly, the Gunwall factors are (1) the textual language, (2) comparison of the language in the texts of both constitutional provisions, (3) constitutional history, (4) preexisting state law, (5) structural differences and (6) matters of particular state or local concern. Gunwall, 106 Wash.2d at 58, 720 P.2d 808; State v. Johnson, 75 Wash.App. 692, 702 n. 4, 879 P.2d 984 (1994), review denied, 126 Wash.2d 1004, 891 P.2d 38 (1995). In the context of Article I, Section 7, factors 1, 2, 3 and 5 were adopted by the Washington Supreme Court in Boland, 115 Wash.2d at 576, 800 P.2d 1112. Accordingly, we only address the Gunwall factors of preexisting state law and matters of state and local concern. Johnson, 75 Wash.App. at 702, 879 P.2d 984; City of Seattle v. Yeager, 67 Wash.App. 41, 45, 834 P.2d 73 (1992), review denied, 121 Wash.2d 1027, 854 P.2d 1086 (1993).
Washington cases have not addressed privacy rights in driving records. RCW 46.52.120(2) specifically authorizes police use of motor vehicle case records. That statute also emphasizes the confidentiality of those records, however, and limits their availability to certain classes of people, including law enforcement, traffic enforcement, and some public officials. Certified abstracts of the driving records are available only to the above, to employers and insurance carriers, and to certain other agencies. RCW 46.52.130. Case law supports the privacy interests of individuals in automobiles. See City of Seattle v. Mesiani, 110 Wash.2d 454, 456-57, 755 P.2d 775 (1988) and cases cited therein; Yeager, 67 Wash.App. at 45-46, 834 P.2d 73. From these related cases and statutes, we find that preexisting state law supports greater privacy protection under Article I, Section 7 in this case.
Gunwall's sixth factor, whether the privacy interest is of state or local concern, is easily met. Law enforcement measures and regulation of drivers on state highways are both matters of local concern. Young, 123 Wash.2d at 180-81, 867 P.2d 593; Yeager, 67 Wash.App. at 46, 834 P.2d 73. There is no need for national uniformity on use of state drivers' records.
In light of the above, we review this matter on independent state constitutional grounds. Const. art. I, § 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." In determining whether a right of privacy has been violated under this provision, the relevant inquiry is whether the State unreasonably intruded into a person's private affairs. State v. Goucher, 124 Wash.2d 778, 782, 881 P.2d 210 (1994); Young, 123 Wash.2d at 181, 867 P.2d 593; Boland, 115 Wash.2d at 577, 800 P.2d 1112. The focus is on the privacy interests Washington citizens have held, and should be entitled to hold, safe from government trespass without a warrant. State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984). A brief review of related privacy interests is helpful.
Fixed sobriety checkpoints of all oncoming motorists were held to violate both the Washington *1079 State and federal constitutions in Mesiani, 110 Wash.2d at 458, 755 P.2d 775.[2] Random spot checks of a driver's license and vehicle, authorized by statute in Washington,[3] were declared unconstitutional in State v. Marchand, 104 Wash.2d 434, 439, 706 P.2d 225 (1985). These stop-and-check intrusions were made without articulable suspicion of wrongdoing and allowed unfettered police discretion in making the stops. Mesiani, 110 Wash.2d at 458, 755 P.2d 775.
The closest analogous cases concern the use of utility records and driver's license checks based on articulable suspicion. In State v. Maxfield, 125 Wash.2d 378, 392, 886 P.2d 123 (1994), the court held that although police may not inspect a person's electrical utility records without a written statement that they suspect the person of a crime and reasonably believe the records could resolve that suspicion, RCW 42.17.314, there is no privacy interest in the utility records. The court found that the legislative purpose was to prevent police fishing expeditionsdefined as the targeting of a particular person for investigationwithout a reasonable suspicion of criminal activity, and the scouring of utility district records for evidence of any crime. Id. at 393, 886 P.2d 123.
In contrast, motor vehicle records are kept by the State primarily for state use. Drivers are presumed to know that the records are available to the police as well as to employers, insurance carriers and others. Similarly, citizens have no reasonable expectation of privacy in warrants records, which are readily accessible by the police. See State v. Williams, 50 Wash.App. 696, 700, 750 P.2d 278 (1988) (warrant checks are reasonable routine police procedures). It is not reasonable to believe a police officer will not have access to a driver's license record. Further, in this case the officers did not go on a fishing expedition. Only those people whom they had personally cited for driving with suspended licenses were placed on the lists. The records were not accessed to search for evidence of a crime, but merely to update the lists for accuracy.
We note that several jurisdictions recognize the authority of police to run random computer checks of passing vehicle licenses, without suspicion of criminal conduct. See, e.g., People v. Sampson, 255 Ill.App.3d 825, 827, 627 N.E.2d 772, 774, 194 Ill.Dec. 435 (1994) (computerized report that owner of vehicle has suspended license is sufficient to justify temporary stop to check driver's license); Village of Lake in the Hills v. Lloyd, 227 Ill.App.3d 351, 591 N.E.2d 524, 169 Ill. Dec. 351 (1992) (random check of vehicle license reveals owner has revoked license; creates reasonable suspicion and stop is not random); State v. Lewis, 288 N.J.Super. 160, 671 A.2d 1126 (1996) (random license plate checks of passing vehicles; no expectation of privacy in vehicle license (which is exposed to public view) or in owner's driving record); State v. Owens, 75 Ohio App.3d 523, 525, 599 N.E.2d 859 (1991) (random investigatory check of license plate not an invasion of Fourth Amendment rights); and other cases cited in Yeager, 67 Wash.App. at 47, 834 P.2d 73. Officer Ditzel was not running random checks here, however; the only people on his list were those he and Officer Marshall had personally cited and knew had suspended licenses. The records information was obtained pursuant to statutory authority, RCW 46.52.120, and provided articulable reason to stop and investigate Ms. Harlow's driving status. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Yeager, 67 Wash.App. at 46-47, 834 P.2d 73.
Although Article I, Section 7 provides broader privacy protection than the Fourth Amendment, the blanket of protection covers only those privacy interests citizens have come to expect and should expect. Goucher, 124 Wash.2d at 782, 881 P.2d 210. The Fourth Amendment protects against unreasonable searches that intrude on a citizen's subjective and reasonable expectation of privacy. Maxfield, 125 Wash.2d at 395, 886 P.2d 123; Young, 123 Wash.2d at 181, 867 *1080 P.2d 593. Driving records kept by the department of licensing, like warrants records, are neither subjectively nor reasonably expected to be unavailable to police officers. We hold that Ms. Harlow's limited privacy interest in her driving record is outweighed by the State's vital interest in promoting highway safety by ensuring that only those qualified to drive do so. Delaware v. Prouse, 440 U.S. 648, 658, 99 S.Ct. 1391, 1398-99, 59 L.Ed.2d 660 (1979).
Affirmed.
THOMPSON and KURTZ, JJ., concur.
NOTES
[1] Ms. Harlow's case was consolidated in district court with two others on the same issue. Only Ms. Harlow's appeal is before this court.
[2] Two years later, the United States Supreme Court upheld sobriety checkpoints under the Fourth Amendment in Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). Yeager, 67 Wash.App. at 46 n. 3, 834 P.2d 73.
[3] RCW 46.64.060 and .070.