60 P.3d 46 (2002)
148 Wash.2d 20
STATE of Washington, Respondent,
v.
Lonnie McKINNEY, Petitioner.
State of Washington, Respondent,
v.
Ralph M. Martin, Petitioner.
City of Everett, Respondent,
v.
Randal D. Schroeder, Petitioner.
Nos. 71487-8, 71604-8, 71488-6.
Supreme Court of Washington, En Banc.
Argued May 14, 2002.
Decided December 5, 2002.
*47 Sharon J. Blackford, Washington Appellate Project, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Daniel J. Clark, Endel R. Kolde, Deputy County Prosecutors, Seattle, for Respondent.
Pamela B. Loginsky, Olympia, Amicus Curiae on Behalf of Washington Association of Prosecuting Attorneys.
Traci A. Sammeth, Perkins Coie, Seattle, Amicus Curiae on behalf of American Civil Liberties Union.
Lisa Daugaard, Neil M. Fox, Seattle-King County Public Defender Assn, Seattle, E.J. Rosenkranz, Kirsten D. Levingston, Riene Thukral, Brennan Center for Justice NY University School of Law, New York, NY, Amicus Curiae on behalf of Washington Association of Criminal Defense Lawyers and the Racial Disparity Project.
Ahndrea L. Blue, Seattle, Amicus Curiae on behalf of National Association for the Advancement of Colored People, Seattle Branch.
Christopher Gibson, Nielsen Broman & Koch Pile, Seattle, Scott R. Santoro, City of Everett Legal Dept., Mark T. Soine, Everett City Attorney, Jon T. Scott, Everett, counsel for other parties.
MADSEN, J.
Lonnie McKinney, Ralph Martin, and Randal Schroeder were each arrested following a series of events that began when police officers accessed information contained in their Department of Licensing (DOL) driver's license records. Each moved for dismissal or suppression on the ground that the officers' searches of DOL databases prior to arrest violated the privacy provisions of the state constitution. Their motions were denied. The defendants were convicted and they appealed. Their cases were consolidated for review and the Court of Appeals affirmed. State v. Martin, 106 Wash.App. 850, 25 P.3d 488 (2001). We agree with the Court of Appeals that computerized police checks of license plate numbers and DOL licensing records do not violate privacy rights guaranteed by article I, section 7 of the Washington State Constitution and affirm.

FACTS
Lonnie McKinney
On January 19, 2000, at approximately 3:40 a.m., Officer Hoag was on routine patrol when he saw a red Ford Explorer in the parking lot of a market. The officer ran the license plate and the associated driver's license for the registered owner of the car. The check indicated that the owner had a suspended driver's license. The officer noticed that the driver of the Ford Explorer matched the physical description of the registered owner of the vehicle. The officer stopped the vehicle and detained the defendant for driving while his license was suspended. When the officer searched the defendant's vehicle incident to arrest he saw a woman, later identified as Miriam McKinney, *48 lying down in the back seat. A computer check revealed that there were two active "no contact" orders relating to Ms. McKinney. The officer confirmed that both orders were valid and had been served. He then cited the defendant for driving while license suspended in the third degree and violation of a no contact order.
Ralph Martin
Based on a neighbor's prior complaint of narcotics activity and an ongoing narcotics investigation, officers of the Seattle Police North Precinct Anti-Crime Team suspected that a certain van might be involved in narcotics related activity. On June 9, 1999, Officer Zylak checked the DOL database for the van's plate and discovered that it was registered to Ralph Martin. He then ran Martin's name through the WACIC (Washington State Criminal Information Computer) database and discovered two outstanding arrest warrants, including one no bail warrant. Officers contacted Martin in the driveway next to the van. Martin initially stated that he was Robert Smith but when an officer indicated that he thought "Smith" was Ralph Martin, Martin admitted his identity and was arrested. In a search incident to arrest, the officers discovered cocaine in Martin's pocket. Martin was charged with drug possession.
Randal Schroeder
On the evening of August 14, 1999, police officer Bruce Fifield was patrolling the parking lot of a motelrandomly checking vehicle license plates for stolen vehicles. In the officer's experience the motel is a place where stolen cars are abandoned. As the officer conducted his check of vehicles in the parking lot, he discovered through the DOL database search that the registered owners of a Chevy Nova and Chevy truck were Donna Schroeder and Randal Schroeder, respectively. These vehicles were parked next to each other. The officer ran these names through WACIC, which revealed that there was an active protection order prohibiting Mr. Schroeder from having contact with Donna Schroeder. After further investigation, the officer discovered that Randal and Donna Schroeder were in a motel room together, and Randal Schroeder was arrested.
The defendants each moved for dismissal or suppression based on violation of article I, section 7 of the Washington State Constitution. The motions were denied. The defendants were convicted in stipulated facts trials and the Court of Appeals affirmed in a consolidated appeal.

Analysis
The defendants contend that the computerized checks of their vehicle registration and licensing information through DOL records without probable cause or a reasonable suspicion of criminal activity violate their right to privacy under article I, section 7 of the Washington State Constitution. Therefore, they argue, the information police officers gained through a search of the records may not be used in any subsequent prosecutions.
Article I, section 7 of the Washington State Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." In State v. Gunwall this court identified six nonexclusive criteria for determining whether, in a given situation, a provision of the state constitution should be given an interpretation independent from that given to the corresponding federal constitutional provision and whether the provision in question extends greater protections for the citizens of this state. State v. Gunwall, 106 Wash.2d 54, 64, 720 P.2d 808 (1986).
It is now well settled that the protections guaranteed by article I, section 7 of the state constitution are qualitatively different from those provided by the Fourth Amendment to the United States Constitution. City of Seattle v. McCready, 123 Wash.2d 260, 267, 868 P.2d 134 (1994). Once this court has determined that a particular provision of the state constitution has an independent meaning using the factors outlined in Gunwall, it need not reconsider whether to apply a state constitutional analysis in a new context. State v. Ladson, 138 Wash.2d 343, 348, 979 P.2d 833 (1999). Similarly, it is well established that article I, *49 section 7 may provide greater protections than those afforded by the Fourth Amendment. State v. Simpson, 95 Wash.2d 170, 178, 622 P.2d 1199 (1980). This court has recognized privacy interests in telephone records, Gumwall, 106 Wash.2d 54, 720 P.2d 808, and curbside garbage, State v. Boland, 115 Wash.2d 571, 800 P.2d 1112 (1990).
However, "`[a] determination that a given state constitutional provision affords enhanced protection in a particular context does not necessarily mandate such a result in a different context.'" State v. Johnson, 128 Wash.2d 431, 446, 909 P.2d 293 (1996) (quoting State v. Russell, 125 Wash.2d 24, 58, 882 P.2d 747 (1994)). Because there is no longer any question that article I, section 7 provides qualitatively different protections for Washington citizens, and in some cases greater protection than the federal constitution, the focus of a challenge under this section is on whether the language of the state constitutional provision and its prior interpretations actually compel a particular result. McCready, 123 Wash.2d at 267, 868 P.2d 134.
In determining whether a search violates article I, section 7, the court must first decide whether the action in question intruded upon a person's "private affairs." See In re Pers. Restraint of Maxfield, 133 Wash.2d 332, 339, 945 P.2d 196 (1997); Boland, 115 Wash.2d 571, 800 P.2d 1112; Gunwall, 106 Wash.2d 54, 720 P.2d 808; State v. Myrick, 102 Wash.2d 506, 510, 688 P.2d 151 (1984). Generally, private affairs are "those privacy interests which citizens of [Washington] have held, and should be entitled to hold, safe from governmental trespass." Myrick, 102 Wash.2d at 511, 688 P.2d 151. This determination is not "merely an inquiry into a person's subjective expectation of privacy but is rather an examination of whether the expectation is one which a citizen of this state should be entitled to hold." McCready, 123 Wash.2d at 270, 868 P.2d 134.
It is appropriate to begin our analysis by looking to what kind of protection has historically been accorded these DOL records. See Gunwall, 106 Wash.2d at 66, 720 P.2d 808 (reviewing state law protections extended to electronic communications); Johnson, 128 Wash.2d at 445, 909 P.2d 293 (considering preexisting state law regulating travel on public thoroughfares); Boland, 115 Wash.2d 571, 800 P.2d 1112 (considering preexisting state law relating to curbside garbage collection).
Historically, Washington citizens have not enjoyed a constitutionally protected privacy interest in their drivers' records. As amicus Washington Association of Prosecuting Attorneys points out, when motor vehicle license plates were first introduced in Washington in 1915, the law required that ownership information be filed with the secretary of state and this information be available to the public. See Laws of 1915, ch. 142, § 5; Laws of 1890, ch. XX, § 2, at 630. In 1937, the legislature adopted legislation creating the DOL and requiring that agency to maintain vehicle ownership and licensing information. See Laws of 1937, ch. 188, §§ 4, 29, 43. That same legislation provided that the information be made available to the public upon request for one dollar. See Laws of 1937, ch. 188, § 80. Until 1990 there were no restrictions on who could obtain vehicle registration information. See Final Legislative Report, 51st Leg., Reg. Sess. 55 (Wash.1990); Substitute H.B. 2463; Laws of 1990, ch. 232.
In 1990, the legislature narrowed the public's access to information from the DOL when it amended RCW 46.12.380. However, the legislature made clear in its purposed language that it did not intend to restrict release of information to law enforcement.
The legislature recognizes the extraordinary value of the vehicle title and registration records for law enforcement and commerce within the state. The legislature also recognizes that indiscriminate release of the vehicle owner information to be an infringement upon the rights of the owner and can subject owners to intrusions of their privacy. The purpose of this act is to limit the release of vehicle owners' names and addresses while maintaining the availability of the vehicle records for the purposes of law enforcement and commerce.
Laws of 1990, ch. 232, § 1.
Additionally, the access restrictions adopted by the legislature in the 1990 *50 amendment expressly except law enforcement uses:
(1) Notwithstanding the provisions of chapter 42.17 RCW, the name or address of an individual vehicle owner shall not be released by the department, county auditor, or agency or firm authorized by the department except under the following circumstances:
....
(5) This section shall not apply to requests for information by governmental entities or requests that may be granted under any other provision of this title expressly authorizing the disclosure of the names or addresses of vehicle owners.
Former RCW 46.12.380 (1990).
As to records of traffic charges and dispositions, the director of licensing in Olympia must keep all abstracts received from the courts on file, which must be open to public inspection during "reasonable business hours." RCW 46.52.101(6) (all abstracts must be available to public for inspection).[1]
Our historical review of driver's license records does not support a conclusion that DOL licensing records constitute "private affairs." However, the question of whether an interest is accorded privacy protection under article I, section 7 also includes "an examination of whether the expectation is one which a citizen of this state should be entitled to hold." McCready, 123 Wash.2d at 270, 868 P.2d 134 (emphasis added). Thus, in addition to the historical treatment of these records, this court has also considered the nature and extent of the information that police learn about a person's personal contacts and associations as a result of the government conduct. Boland, 115 Wash.2d at 578, 800 P.2d 1112 (trash contains personal effects that reveal much about person's activities, associations, and beliefs); State v. Young, 123 Wash.2d 173, 183-84, 867 P.2d 593 (1994) (infrared device may reveal homeowner's finances, and activities within home); In re Maxfield, 133 Wash.2d at 354, 945 P.2d 196 (power records do not reveal discrete information about person's activities). Part of this inquiry involves the extent to which the subject matter is voluntarily exposed to the public. Young, 123 Wash.2d at 182, 867 P.2d 593 (inside of home not voluntarily revealed); Johnson, 128 Wash.2d at 449, 909 P.2d 293 (home in vehicle readily accessible from passenger compartment).
Although the question of whether a driver's license record falls within the ambit of the protection of a "private affair" has not been decided, the defendants cite the recent decision in In re Maxfield as being analogous. In re Maxfield, 133 Wash.2d 332, 945 P.2d 196. There the court split on whether citizens have a privacy interest in the information contained in a public power company's customer usage records.
A majority of the justices in Maxfield held there is no protected privacy interest in power records, in part because the information in these records discloses no discrete information about an individual's activities. The court observed that, unlike telephone records or curbside garbage, the information kept by electrical power providers did not disclose intimate details of the Maxfields' lives, or the identity of their friends or political and business associates. Id. at 354, 945 P.2d 196. Accordingly, a majority of the court agreed that power consumption information is not a private affair protected under the Washington Constitution. Id. at 354-55, 945 P.2d 196. The lead opinion, concurred in by four justices, disagreed and would have held that a privacy interest exists in power records because power is a necessary component of modern life, and a prerequisite of receiving power is a requirement to disclose one's identity and one's power usage. Id. at 341, 945 P.2d 196.
Aside from the fact that the lead opinion's analysis had the support of only four justices, there is a significant distinction between Maxfield and the present case. In Maxfield, the government sought access to records kept by a public utility for business use, while in this case the government is accessing records kept by a government entity *51 expressly for use by that agency and law enforcement. Laws of 1990, ch. 232, § 1. Perhaps more importantly, as in Maxfield, the information kept in the drivers' license records does not reveal intimate details of the defendants' lives, their activities, or the identity of their friends or political and business associates. The only information accessed by police from the DOL records were the names and addresses of the registered owners associated with license plate numbers, physical descriptions, and license status. The driving public is well aware that vehicle and driver licensing procedures require disclosure of such information, and it is unlikely that a citizen would expect this information is not available for law enforcement purposes.[2]
Next, the defendants cite Young, 123 Wash.2d 173, 867 P.2d 593, as support for a conclusion that DOL records are "private affairs." They point to this court's concern that privacy rights not simply mirror the "current state of the commercial technology industry." Id. at 182, 867 P.2d 593. In Young, the police used a thermal imaging device that could sense heat sources and usage within a home. The court observed that, generally, what is voluntarily exposed to the public is not considered to be a part of a person's private affairs. Id. at 182, 867 P.2d 593. Nevertheless, the court held that the device used by the officers allowed them to see more than was voluntarily exposed. Similarly, the defendants here argue that public exposure of a license plate does not equate to public exposure of driver's license records. Simply because the officers have access to databases through computers in their patrol cars, they urge, does not negate citizens' expectation that their records are private.
As the State points out, however, while it is necessary to display a license plate to drive a motor vehicle in this state, it is not imperative to drive a motor vehicle, especially, as in one of the cases on review here, when a driver's license has been suspended (McKinney). Further, although Young emphasized that homeowners did not voluntarily expose the inside of the home, it was the wealth of information available to police by use of the device that made the information part of Young's "private affairs." As noted, the nature and extent of the information police learn about a person's personal contacts and associations is a significant factor in a `private affairs' analysis. Gunwall, 106 Wash.2d at 67, 720 P.2d 808 (police impermissibly learned who a person was contacting by tracking her phone calls). Using the thermal imaging device, police in Young were able to draw specific inferences about the inside of the house, could detect which rooms were being used, may have been able to discern something of the homeowner's finances by knowing how many rooms were being heated, could tell how many people were inside, and could ascertain information about activities occurring within the home. Id. at 183-84, 867 P.2d 593. Because the officers could learn so much about citizens and the inside of their homes, use of the device intruded upon protected privacy interests. Here, officers cannot learn about a person's activities or draw inferences about a constitutionally protected sphere (e.g., the inside of a person's home, as in Young) by accessing DOL records. Rather, the information available from DOL, the names and addresses of registered vehicle owners and license status, is not the personal type of information derived from the device in Young.
Finally, one lower court case has dealt directly with the issue of DOL records. State v. Harlow, 85 WaskApp. 557, 933 P.2d 1076 (1997). In Harlow the Court of Appeals considered whether officers accessing DOL records engaged in an impermissible search. The court found that drivers are presumed to know that driver's records are available to police and that it is not reasonable to believe police will not have access to the records. Id.
The defendants contend that Harlow is no longer good authority because it predates Maxfield and because it erroneously analyzed the defendants' rights to privacy under *52 the reasonable expectation of privacy standard set forth for analysis under the Fourth Amendment. Id. at 562-63, 933 P.2d 1076. Although the court did not answer whether driver's records are "those privacy interests which citizens of [Washington] have held, and should be entitled to hold, safe from governmental trespass," Myrick, 102 Wash.2d at 511, 688 P.2d 151, we agree with the court's observations: DOL records are kept by a government agency for use by that agency and law enforcement. Considering the purpose for which these records are created, citizens of this state are not entitled to expect that their information is private and protected from disclosure for law enforcement purposes.
Based on the historical treatment of driver's license records, the fact that these records reveal little about a person's associations, financial dealings, or movements, and the purpose for which the State compiles and maintains these records, we hold that there is no protected privacy interest in the information contained in a DOL driver's record under article I, section 7 of our state constitution.
The Court of Appeals is affirmed.
ALEXANDER, C.J, SMITH, JOHNSON, SANDERS, IRELAND, BRIDGE, OWENS, JJ., concur.
CHAMBERS, J., concurring.
I concur with the result reached by the majority, but write separately to clearly place into context our holding today. Washington residents have a privacy interest in Department of Licensing (DOL) records. Cf. RCW 46.12.390. This is supported by our history, our statutes, and the very nature of the private information contained in the records. While this privacy interest is strong and protected, the legislature has given the police the power to access DOL records under certain circumstances. That grant of authority does not defeat the existence of the privacy interest; it modifies the way it is enjoyed. By law, law enforcement officers have the authority to access DOL records, but this limited access does not offend protected privacy interests, and therefore I concur.
This court uses a two-pronged analysis when analyzing a claim under article I, section 7 of the state constitution. In re Pers. Restraint of Maxfield, 133 Wash.2d 332, 339, 945 P.2d 196 (1997). First, we determine whether a cognizable privacy interest exists. Id. Second, we determine whether that interest has been invaded with or without authority of law. Id.; see also Const, art. I, § 7. When considering the existence of the privacy interest, we should carefully examine the historical protections granted by our state law. See, e.g., State v. Gunwall, 106 Wash.2d 54, 66, 720 P.2d 808 (1986); State v. Johnson, 128 Wash.2d 431, 445, 909 P.2d 293 (1996).
For over a decade, our legislature has recognized an important privacy interest in driver's license records. See RCW 46.12.380. This legislative solicitude is compelling evidence of the existence of a cognizable privacy interest. In 1990, the legislature clearly articulated its concern finding that "indiscriminate release of the vehicle owner information [is] an infringement upon the rights of the owner and can subject owners to intrusions on their privacy." Laws of 1990, ch. 232, § 1. To protect the privacy it recognized, the legislature enacted severe restrictions on the terms of disclosure and mandated notification of the driver. Id. § 2 (eodified at former RCW 46.12.380 (1990)). Each violation of the terms of disclosure is a gross misdemeanor punishable by a fine of up to $10,000, imprisonment up to one year, or both. RCW 46.12.390. The declaration of legislative purpose, the stringent protections of the information, and the heavy penalties for violation of the law clearly demonstrate that our legislature has recognized a strong privacy interest in DOL records.
Further, the nature and extent of personal information available in the government records is of the type we have protected before. Cf. State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984). This court has always jealously protected the privacy of Washington residents; we have found cognizable privacy interests in curbside garbage and in telephone records. State v. Boland, 115 Wash.2d 571, 578, 800 P.2d 1112 (1990); *53 Gunwall, 106 Wash.2d at 69, 720 P.2d 808. But see Maxfield, 133 Wash.2d 332, 945 P.2d 196 (failing to obtain five signatures for the proposition that there is a privacy interest in information contained in electrical consumption records). I recognize that unlike the information potentially revealed in household garbage or telephone records, DOL records do not reveal the driver's activities, associations, or beliefs. However, DOL records include age, weight, personal appearance, and ethnicity, all of which may be a great deal more sensitive than the electrical consumption records at issue in Maxfield. In addition, DOL records easily reveal the driver's address, which many people, especially the victims of domestic violence, legitimately desire to keep private to protect their personal safety. The sensitive nature of this personal information supports the legislature's finding of a privacy interest in the records.
The second prong of the article I, section 7 analysis is whether the government intrusion into private affairs was conducted with or without the authority of law. Maxfield, 133 Wash.2d at 342, 945 P.2d 196. The State has a legitimate police power interest in allowing the police access to these records in performance of their duties. See Laws of 1990, ch. 232, § 1 (recognizing "the extraordinary value of the vehicle title and registration records for law enforcement"). In this case, the evidence clearly demonstrated that the police accessed the records for legitimate law enforcement purposes with "authority of law." The legislature clearly intended to maintain "the availability of [ ] vehicle records for the purposes of law enforcement." Laws of 1990, ch. 232, § 1. Therefore, while vehicle owners have a protected privacy interest in the information contained in DOL licensing records, I concur with the majority that this court should affirm the Court of Appeals in denying the motions for dismissal or suppression.
NOTES
[1] Defendant Martin's reliance on RCW 46.52.120 is misplaced. That provision places certain restrictions on abstracts that are cross-referenced with accident reports. Those records are not implicated here.
[2] The parties and amicus make various allegations about what sort of information may be gleaned from the driver's license record, but there is no allegation or offer of proof that even the most detailed DOL record actually tracks intimate details about a person's activities and associations.