# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  59255-0-II |
| Respondent, | |
| v. | |
| PABLO A. MUNOZ-HERNANDEZ, | PUBLISHED OPINION |
| Appellant. | |

LEE, J. — Pablo A. Munoz-Hernandez appeals his conviction for second degree rape following a bench trial on stipulated facts.  Munoz-Hernandez argues that the trial court erred when it denied his motion to suppress evidence of his deoxyribonucleic acid (DNA) profile match to the forensic file for a reported rape because the only reason the State had his DNA was pursuant to a vacated unlawful possession of a controlled substance (UPCS) conviction and the profile match occurred after his conviction was vacated.  Munoz-Hernandez contends this violated his article I, section 7 right to privacy.  Munoz-Hernandez also argues that the State violated his right to procedural due process when it failed to provide him with notice that his UPCS conviction was vacated and that he had a right to have his DNA profile expunged.  Munoz-Hernandez further argues ineffective assistance of counsel based on defense counsel's alleged failure to advance the proper grounds in the motion to suppress.

Because RCW 43.43.754 provided the legal authority for the State to collect and retain Munoz-Hernandez's DNA and Munoz-Hernandez does not actually challenge RCW 43.43.754, the trial court did not err when it denied Munoz-Hernandez's motion to suppress.  Also, there was

no procedural due process violation. Finally, even assuming without deciding that Munoz-Hernandez's counsel's performance was deficient for failing to raise proper grounds for the motion to suppress, Munoz-Hernandez cannot show prejudice; therefore, the claim of ineffective assistance fails. Accordingly, we affirm Munoz-Hernandez's conviction.

FACTS

In 2018, Munoz-Hernandez was convicted of UPCS under RCW 69.50.4013. Munoz-Hernandez had no other criminal history. Due to his felony conviction, Munoz-Hernandez was required under RCW 43.43.754(1)(a) to submit a biological sample, a cheek swab, for the purpose of DNA identification. Munoz-Hernandez supplied the sample, and Washington State Patrol (WSP) created a DNA identification profile for him pursuant to RCW 43.43.754(6). Munoz-Hernandez's DNA profile was transmitted to the Combined DNA Index System (CODIS)[1] database in 2019.

In February 2021, the Supreme Court decided *State v. Blake*, which declared Washington's UPCS statute, RCW 69.50.4013, unconstitutional. 197 Wn.2d 170, 195, 481 P.3d 521 (2021). Consequently, in May 2021, the State moved to vacate Munoz-Hernandez's UPCS conviction. The trial court vacated and dismissed Munoz-Hernandez's UPCS conviction with prejudice. The order vacating and dismissing Munoz-Hernandez's UPCS convicted stated:

> [] The Clerk of the court shall immediately transmit a copy of this order vacating the conviction to the Washington State Patrol Identification Section and to the Department of Corrections. The Washington State Patrol shall immediately update

---

[1] CODIS "is a database maintained by the FBI with qualifying DNA profiles submitted by all 50 states, the federal government, the District of Columbia, the U.S. Army Criminal Investigations Lab and Puerto Rico." Jean Johnston, *CODIS*, WASH. STATE PATROL, https://app.leg.wa.gov/committeeschedules/Home/Document/185334 (last visited July 30, 2025).

their records to reflect the vacation of the charge(s), and shall transmit the order vacating the conviction to the federal bureau of investigation.

Clerk's Papers (CP) at 33. The State did not notify Munoz-Hernandez that his conviction had been vacated.

In September 2023, the Centralia Police Department received a WSP Crime Laboratory Report matching Munoz-Hernandez's CODIS DNA profile with a forensic DNA profile from a reported rape that occurred in 2006. Based on that profile match, the State charged Munoz-Hernandez with second degree rape. The trial court found probable cause and issued a warrant for Munoz-Hernandez's arrest.

In November 2023, the trial court authorized the State to take another cheek swab from Munoz-Hernandez for further DNA analysis. Munoz-Hernandez's November 2023 DNA swab matched the DNA from the 2006 forensic profile of the reported rape. Also in November 2023, WSP administratively removed Munoz-Hernandez's DNA profile from CODIS.

In December 2023, Munoz-Hernandez filed a motion to suppress the DNA evidence "as a result of an unconstitutional/illegal search pursuant to CrR 3.6." CP at 16. Munoz-Hernandez argued that his DNA profile should have been removed from CODIS following the vacation of his UPCS conviction in May 2021 and that the September 2023 DNA profile comparison that led to a match with the 2006 DNA profile from the reported rape constituted a warrantless search. Munoz-Hernandez requested the trial court suppress any evidence "found during the illegal search." CP at 18.

At the hearing on the motion, Munoz-Hernandez argued that the only reason he had a DNA profile in CODIS was because of the now-unconstitutional UPCS statute, and had his profile been

removed when the conviction was vacated, no match would have occurred. Munoz-Hernandez further argued that had he received proper notice of his vacated conviction, he could have sought to expunge his DNA data. The State argued that Munoz-Hernandez's 2018 DNA sample was lawfully taken at the time and that DNA samples are governed by RCW 43.43.754.[2] The trial court agreed with the State and denied Munoz-Hernandez's motion to suppress the DNA evidence. In the trial court's order denying Munoz-Hernandez's motion to suppress, conclusion of law (COL) 2.1 stated:

> The subsequent vacation of [Munoz-Hernandez's] [UPCS] conviction due to the ruling in *State v. Blake* does not invalidate the collection of [Munoz-Hernandez's] biological sample on 10-4-2018.

CP at 40.

Munoz-Hernandez elected to proceed to a stipulated facts bench trial. Based on the stipulated facts, the trial court found Munoz-Hernandez guilty of second degree rape. Munoz-Hernandez received an indeterminate sentence of 102 months to life.

Munoz-Hernandez appeals.

ANALYSIS

Munoz-Hernandez argues that the State violated his rights under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution when it (1) did not update its records following the vacation of his 2018 UPCS conviction; (2) retained his DNA profile; and (3) "re-analyzed" the DNA profile in September 2023. Br. of Appellant at 4. Accordingly, Munoz-Hernandez contends that any evidence stemming from the September 2023

---

[2] RCW 43.43.754 provides the scope and application of Washington's DNA identification system.

DNA profile match to the 2006 rape case should have been suppressed under the fruit of the poisonous tree doctrine and the exclusionary rule. Munoz-Hernandez also argues ineffective assistance of counsel for his counsel's alleged failure to "advance the proper grounds" for suppression of the DNA evidence. Br. of Appellant at 5. We hold that Munoz-Hernandez's claims fail.

A.     MOTION TO SUPPRESS: ALLEGED ILLEGAL SEIZURE AND RETENTION OF DNA PROFILE

1.     Legal Principles

The Fourth Amendment and article I, section 7 both protect individuals against unreasonable searches and seizures. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7; *State v. Teulilo*, 1 Wn.3d 595, 603, 530 P.3d 195 (2023). It is widely accepted that article I, section 7 provides broader protections than the Fourth Amendment. *State v. Mayfield*, 192 Wn.2d 871, 882, 434 P.3d 58 (2019) (stating, "Article I, section 7 and its corresponding exclusionary rule provide uniquely heightened privacy protections."); *accord, e.g.*, *Teulilo,* 1 Wn.3d at 608.

Article I, section 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." A search occurs under article I, section 7 if "the government disturbs 'those privacy interests which citizens of this state *have held, and should be entitled to hold*, safe from governmental trespass absent a warrant.'" *State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014) (emphasis in original) (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)). Thus, the primary purpose behind article I, section 7 is to broadly protect the individual right to privacy. *Mayfield*, 192 Wn.2d at 882; *Hinton*, 179 Wn.2d at 868.

An article I, section 7 analysis requires a two-part inquiry. *Hinton*, 179 Wn.2d at 868-69. First, courts must determine if the challenged action disturbs an individual's private affairs. *State*

*v. McKinney*, 148 Wn.2d 20, 27, 60 P.3d 46 (2002). "This determination is not 'merely an inquiry into a person's subjective expectation of privacy but is rather an examination of whether the expectation is one which a citizen of this state should be entitled to hold.'" *Id.* (quoting *City of Seattle v. McCready*, 123 Wn.2d 260, 270, 868 P.2d 134 (1994)). Courts examine the historical treatment of the asserted interest and the "'nature and extent of the information which may be obtained as a result of the government conduct.'" *Hinton*, 179 Wn.2d at 869 (quoting *State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007)).

An individual's constitutional rights depend on his or her status. *State v. Olsen*, 194 Wn. App. 264, 270-71, 374 P.3d 1209 (2016), *aff'd*, 189 Wn.2d 118, 399 P.3d 1141 (2017); *State v. Rainford*, 86 Wn. App. 431, 438, 936 P.2d 1210, *review denied*, 133 Wn.2d 1019 (1997). Arrestees, prisoners, and convicted felons enjoy lesser privacy rights than that of an ordinary, law-abiding individual. *State v. Surge*, 160 Wn.2d 65, 73-74 (lead opinion of C. Johnson, J.), 82 (concurring opinion of Chambers, J.), 83 (concurring opinion of Owens, J.), 156 P.3d 208 (2007); *Rainford*, 86 Wn. App. at 438. For instance, the collection of "identifying information from convicted felons does not infringe on a privacy interest that convicted felons of this state have held, or should be entitled to hold, safe from government trespass." *Surge*, 160 Wn.2d at 74 (lead opinion of C. Johnson, J.), 82 (concurring opinion of Chambers, J.), 83 (concurring opinion of Owens, J.). This applies to the collection of DNA samples from convicted felons under RCW 43.43.754. *Id.* at 74-79 (determining RCW 43.43.754 does not violate article I, section 7) (lead opinion of C. Johnson, J.), 82 (concurring opinion of Chambers, J.), 83 (concurring opinion of Owens, J.).

Next, *if* a valid privacy interest has been disturbed, courts determine whether the "'authority of law'" justifies the disturbance. *McCready*, 123 Wn.2d at 271. For instance, this may be in the form of a valid warrant. *State v. Afana*, 169 Wn.2d 169, 176-77, 233 P.3d 879 (2010).

Under the exclusionary rule, evidence obtained during an illegal search must be suppressed. *State v. Gaines*, 154 Wn.2d 711, 716-17, 116 P.3d 993 (2005). Further, all subsequently discovered evidence based on the illegal search becomes fruit of the poisonous tree and must also be suppressed. *State v. Olson*, 33 Wn. App. 2d 667, 679, 565 P.3d 128 (2025); *State v. Allen*, 138 Wn. App. 463, 469, 157 P.3d 893 (2007); WASH. CONST. art. I, § 7.

RCW 43.43.754 provides the circumstances and procedures for which the State may collect and retain DNA samples from convicted felons. RCW 43.43.754 states:

> The detention, arrest, or conviction of a person based upon a database match or database information is not invalidated if it is determined that the sample was obtained or placed in the database by mistake, or if the conviction . . . that resulted in the collection of the biological sample was subsequently vacated or otherwise altered in any future proceeding including but not limited to posttrial or postfact-finding motions, appeals, or collateral attacks.

RCW 43.43.754(10).

2.      Alleged Illegal Seizure and Retention

Munoz-Hernandez argues that the trial court erred when it denied his motion to suppress because WSP "violated a court order by not destroying [Munoz-Hernandez's] DNA" following the vacation of his 2018 UPCS conviction. Br. of Appellant at 15. He asserts that based on this violation, evidence of his DNA profile match, both in September 2023 and November 2023, should have been suppressed under the fruit of the poisonous tree doctrine. Munoz-Hernandez further

argues that WSP's retention of his DNA profile violated his right to privacy under article I, section 7 because WSP did not have the authority to retain his DNA sample. In the alternative, Munoz-Hernandez contends that if the fruit of the poisonous tree doctrine does not apply, the trial court still erred in failing to suppress because the exclusionary rule prohibits use of his DNA when the statute underlying his conviction was declared unconstitutional. We disagree.

### a. Arguments raised for the first time on appeal

During the suppression hearing, Munoz-Hernandez did not raise any article I, section 7 or Fourth Amendment arguments. The State argues that Munoz-Hernandez failed to preserve his arguments for appeal and that this court should decline to review his constitutional challenges. We agree with the State.

Generally, appellate courts do not consider unpreserved errors raised for the first time on appeal. *State v. A.M.*, 194 Wn.2d 33, 38, 448 P.3d 35 (2019). However, a party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a)(3); *A.M.*, 194 Wn.2d at 38. To be manifest, a party must demonstrate actual prejudice. *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). This means that "'the asserted error had practical and identifiable consequences in the trial of the case.'" *A.M.*, 194 Wn.2d at 38 (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)).

### b. No manifest error

The record shows that Munoz-Hernandez was convicted of UPCS in 2018. In 2018, a violation of the UPCS statute, RCW 69.50.4013, constituted a felony. Former RCW 69.50.4013 (2018). RCW 43.43.754 provides that any individual convicted of a felony must provide a DNA sample. RCW 43.43.754(1)(a). Therefore, Munoz-Hernandez supplied a DNA sample to the

State, and WSP created a DNA identification profile for him. Thus, the State lawfully obtained

Munoz-Hernandez's DNA in 2018.

The trial court later vacated Munoz-Hernandez's UPCS conviction and ordered:

[] The Clerk of the court shall immediately transmit a copy of this order vacating the conviction to the Washington State Patrol Identification Section and to the Department of Corrections. The Washington State Patrol shall immediately *update their records to reflect the vacation* of the charge(s), and shall transmit the order vacating the conviction to the federal bureau of investigation.

CP at 33 (emphasis added).

Munoz-Hernandez contends that WSP violated the trial court's order "by not destroying [Munoz-Hernandez's] DNA." Br. of Appellant at 15. However, contrary to Munoz-Hernandez's contention, the record shows that the trial court *did not* order WSP to destroy Munoz-Hernandez's DNA. The order only required that WSP update its "records." CP at 33. While a consequence of WSP updating its records may have ultimately led to the removal of Munoz-Hernandez's DNA profile, the court order itself was not an order to destroy or expunge Munoz-Hernandez's DNA profile. As such, any claim that WSP failed to comply with a direct court order is unpersuasive.[3]

The crux of Munoz-Hernandez's argument is that the State unlawfully retained his DNA profile for comparison, which is tantamount to illegally obtained evidence, and therefore, the September 2023 DNA profile match to the 2006 rape case is the fruit of the poisonous tree. However, Munoz-Hernandez's argument—indeed, his entire briefing—simply ignores the

---

[3] Moreover, simply having a vacated conviction does not entitle an individual to have their DNA record immediately expunged. *See* WAC 446-75-070. In fact, WSP "will retain the convicted offender's DNA record in its DNA identification system until expungement pursuant to WAC 446-75-070 or the patrol determines that the DNA record no longer qualifies to be retained in the DNA identification system." WAC 446-75-060(2).

statutory and regulatory scheme surrounding DNA collection and retention. Furthermore, Munoz-Hernandez failed to respond to any argument regarding RCW 43.43.754, even after the State pointed to that statute as the lawful grounds for its retention of his DNA profile.

RCW 43.43.754(10) states:

The detention, arrest, or *conviction* of a person *based upon a database match* or database information *is not invalidated if it is determined that the sample was obtained or placed in the database by mistake*, *or if the conviction . . . that resulted in the collection of the biological sample was subsequently vacated or otherwise altered in any future proceeding* including but not limited to posttrial or postfact-finding motions, appeals, or collateral attacks.

(Emphasis added).

RCW 43.43.754(10) squarely captures Munoz-Hernandez's circumstances. Munoz-Hernandez provided a DNA sample based on a felony conviction that "was subsequently vacated." RCW 43.43.754(10). RCW 43.43.754(10) goes so far as to provide that a database match and subsequent arrest are valid *even if Munoz-Hernandez's DNA had been placed in the database by mistake.* Thus, even if Munoz-Hernandez's DNA profile was in the system by mistake, his arrest and conviction for the 2006 rape based on the September 2023 DNA profile match are valid.

Article I, section 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, *without authority of law*." (Emphasis added.) RCW 43.43.754 is the authority of law for the State to retain Munoz-Hernandez's DNA profile for comparison.

Moreover, the Supreme Court held in *Surge* that RCW 43.43.754 does not violate article I, section 7. 160 Wn.2d at 74-79 (lead opinion of C. Johnson, J.), 82 (concurring opinion of Chambers, J.), 83 (concurring opinion of Owens, J.). Though the appellants in *Surge* had slightly different circumstances than Munoz-Hernandez, notably—and, indeed, fatal to the claims on

appeal—Munoz-Hernandez does not actually challenge the constitutionality of RCW 43.43.754. *See id.* at 69. Thus, the State's retention of Munoz-Hernandez's DNA profile for a DNA comparison is supported by authority of law—namely, RCW 43.43.754(10).

Munoz-Hernandez asserts the alternative argument that the exclusionary rule prohibits use of his DNA when the statute underlying his conviction, RCW 69.50.4013, was declared unconstitutional. He contends "the State relied on a conviction that was declared unconstitutional to obtain and maintain [his] DNA. Without that authority, there was no independent basis for the State to obtain [his] DNA in 2018. And there was no basis to retain or re-analyze [his] DNA in September 2023." Br. of Appellant at 44. To support his contention, Munoz-Hernandez relies on *State v. Paniagua*, which provides for *Blake*'s retroactivity: "If a statute is unconstitutional, it is and has always been a legal nullity." 22 Wn. App. 2d 350, 354, 511 P.3d 113, *review denied*, 200 Wn.2d 1018 (2022).

However, our Supreme Court recently disavowed Munoz-Hernandez's alternative argument in *State v. Olsen*.[4] The *Olsen* court stated that an unconstitutional statute is not "a nullity, void ab initio." 3 Wn.3d at 701. The court further stated that "[a] defendant is convicted of a nonexistent crime when *no statute*, *at the time they committed the conduct for which they are convicted*, criminalizes that conduct." *Id.* at 699 (emphasis added). However, "'the effect of a determination of constitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration.'" *Id.* at 700

---

[4] 3 Wn.3d 689, 701, 555 P.3d 868 (2024).

(quoting *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 60 S. Ct. 317, 84 L. Ed. 329 (1940)).

Here, the parties agree that in 2018, UPCS under RCW 69.50.4013 was a "valid crime." *See id.* at 701. And, as discussed above, Munoz-Hernandez's DNA was lawfully taken at the time pursuant to a valid crime.

Munoz-Hernandez misidentifies the authority that allowed the State to lawfully take his DNA sample. While the violation of RCW 69.50.4013 constituted a felony in 2018, that statute did not provide the State with authority to obtain Munoz-Hernandez's DNA. Rather, the State's authority derived from RCW 43.43.754. Thus, Munoz-Hernandez's reliance on RCW 69.50.4013 being declared unconstitutional in *Blake* to support his challenge is misplaced. RCW 43.43.754, not RCW 69.50.4013, provides the legal authority for the State to collect and retain his DNA sample, even after his conviction was vacated. Munoz-Hernandez does not challenge RCW 43.43.754. Thus, Munoz-Hernandez's challenge based on the exclusionary rule fails.

Accordingly, because RCW 43.43.754 provided the State with the authority to obtain Munoz-Hernandez's DNA sample in 2018, as well as retain Munoz-Hernandez's DNA sample for comparison, the trial court did not err in denying Munoz-Hernandez's suppression motion. Thus, there is no manifest error because Munoz-Hernandez has failed to show that there are "practical and identifiable consequences" resulting in actual prejudice. *A.M.*, 194 Wn.2d at 38-39; RAP 2.5(a)(3). Therefore, Munoz-Hernandez may not raise his unpreserved challenge based on an alleged violation of article I, section 7 for the first time on appeal.[5]

---

[5] Munoz-Hernandez also cites to the Fourth Amendment in his brief, but focuses only on article I, section 7 in his substantive arguments. "Passing treatment of an issue or lack of reasoned

3. Sufficient Procedural Due Process

Munoz-Hernandez also argues that the State violated his right to procedural due process when it failed to provide him with notice that his UPCS conviction was vacated and that he had a right to have his DNA profile expunged. We disagree.

a. Legal principles

Article I, section 3 of the Washington Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law." *See also* U.S. CONST. amend. XIV. The essence behind the procedural due process requirement is that an individual "'in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348-49, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (brackets in original) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171-172, 71 S.Ct. 624, 95 L. Ed. 817 (1951) (Frankfurter, J., concurring)); *see also In re Det. of Lough*, 27 Wn. App. 2d 717, 734, 533 P.3d 1184 (2023), *review denied*, 2 Wn.3d 1013 (2024) ("The procedural component of the due process clause requires that government action be implemented in a fundamentally fair manner.").

Courts employ the *Mathews* balancing test to determine procedural due process protections. *Lough*, 27 Wn. App. 2d at 734. Courts consider (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

---

argument is insufficient to merit judicial consideration." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013)); RAP 10.3(a). Therefore, we do not address the Fourth Amendment challenge.

safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

>    b.    No procedural due process violation

Munoz-Hernandez claims his right to procedural due process was violated when the State "maintained his DNA without notifying him of his right to have it expunged and by not expunging it." Br. of Appellant at 45. Despite his claims, Munoz-Hernandez fails to actually conduct a procedural due process analysis.

Instead of a procedural due process analysis, Munoz-Hernandez argues that the State violated RCW 5.70.020.[6] But RCW 5.70.020 is inapplicable.

RCW 5.70.020 provides:

> A person may submit an application to the [WSP] to have his or her DNA reference sample data expunged from the [WSP]'s DNA identification system in cases where: (i) The person's DNA reference sample was collected and entered into the system and (ii) the charges against the person were dismissed with prejudice or the person was found not guilty.

RCW 5.70.020(2)(a). A reference sample is a "sample collected from an individual by a governmental entity for the purpose of comparison to DNA profiles developed in a criminal case." RCW 5.70.005(6).

The DNA sample at issue here is Munoz-Hernandez's 2018 DNA sample, which was collected after he had been convicted of a felony. Munoz-Hernandez's 2018 DNA sample was not

---

[6] Munoz-Hernandez also alleges that the State violated 34 U.S.C. § 12592 by not immediately expunging his DNA data. However, this allegation is raised for the first time on appeal and Munoz-Hernandez fails to even argue how this argument raised for the first time on appeal meets the requirements of RAP 2.5(a)(3). Therefore, we decline to address this issue.

collected for the purpose of comparing DNA profiles developed in a criminal case where the charge was later dismissed with prejudice or where Munoz-Hernandez was found not guilty. Thus, while the DNA sample collected from Munoz-Hernandez in November 2023 was a reference sample collected for the purpose of comparing DNA profiles in the 2006 rape case, Munoz-Hernandez's 2018 DNA sample was not collected as a reference sample for the purpose of comparing DNA profiles developed in a criminal case where the charge was later dismissed with prejudice or where Munoz-Hernandez was found not guilty. Therefore, RCW 5.70.020 is inapplicable, and Munoz-Hernandez's argument fails.

Moreover, even if Munoz-Hernandez did actually conduct a procedural due process analysis to support his argument, his argument fails.

In conducting the *Mathews* procedural due process analysis, courts first consider the private interest affected by the official action. *Mathews*, 424 U.S. at 335. Generally, individuals retain a privacy interest in their identity, and DNA serves to identify. *Surge*, 160 Wn.2d at 72-73. The record shows that the State did not immediately expunge Munoz-Hernandez's DNA profile after his 2018 conviction was vacated in 2021, nor did the State provide notice to Munoz-Hernandez in 2021 that his 2018 conviction had been vacated, which supposedly precluded him from taking steps to expunge his DNA. Thus, Munoz-Hernandez's DNA profile remained in WSP's identification system after his 2018 conviction was vacated, and the State's retention of Munoz-Hernandez's DNA profile lessened his privacy right. This factor weighs in favor of Munoz-Hernandez.

Next, courts determine "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."

15

*Mathews*, 424 U.S. at 335. Here, Munoz-Hernandez had a right to expunge his DNA data from the WSP system following the vacation of his conviction. WAC 446-75-060, -070. This right does not expire. *See* WAC 446-75-070. Munoz-Hernandez implies in his briefing that had he been provided notice that his 2018 conviction was vacated, he could have sought to have his DNA profile expunged. However, because an individual does not ever *lose* the right to expunge his or her DNA data, barring other felony convictions, the risk of an erroneous deprivation is far less weighty than it would be if Munoz-Hernandez had only a short window of time to apply for expungement following the vacation of his conviction.

Moreover, the statutory and regulatory scheme provide guardrails for circumstances in which the State may use DNA data in the system, which reduces the risk of erroneous deprivation of a person's rights based on a delayed deletion from the database. The State is prohibited from using DNA data "for any research or other purpose that is not related to a criminal investigation, to the identification of human remains or missing persons, or to improving the operation of the system." RCW 43.43.759; *see also* WAC 446-75-020; WAC 446-75-030. Thus, because Munoz-Hernandez does not lose his right to have his DNA data expunged and because the State is limited in its use of the DNA data, the lack of notice to Munoz-Hernandez that his 2018 conviction was vacated[7] and the delay in expungement from the database is not an undue risk of an erroneous deprivation of rights. The second *Mathews* factor weighs in favor of the State.

Finally, courts assess the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would

---

[7] We note that the state-wide efforts to vacate UPCS convictions pursuant to *Blake* were well-publicized and extensively covered by the press.

entail." *Mathews*, 424 U.S. at 335. Here, the legislature determined that the State has a compelling interest in maintaining DNA databases to assist "federal, state, and local criminal justice and law enforcement agencies in both the identification and detection of individuals in criminal investigations and the identification and location of missing and unidentified persons." RCW 43.43.753. The CODIS database is comprehensive—as of 2017, it contained more than 275,000 DNA profiles. *CODIS Lab.*, WASH. STATE PATROL, https://www.wsp.wa.gov/forensics/docs/crimelab/codis_brochure.pdf (last visited July 31, 2025). In light of the volume of cases involved after *Blake*, to require the State to determine each defendant's eligibility to have their DNA profile expunged and to immediately locate and provide such notice—especially and also considering the application process for expungement found in WAC 446-75-070—would simply be a tremendous administrative burden. This factor also weighs in favor of the State.

Munoz-Hernandez generally has a right to privacy in his DNA profile. But between the low risk of erroneous deprivation, the State's limited use of DNA data, and the State's overall interest in its database, we hold that the State did not violate procedural due process by not locating and notifying Munoz-Hernandez of his vacated conviction or that he had a right to expunge his DNA profile, or by not immediately expunging his DNA profile from the database.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Munoz-Hernandez argues that he was denied effective assistance of counsel because "defense counsel advanced the wrong legal basis that would have supported [Munoz-Hernandez's] position and would have resulted in suppression of the evidence." Br. of Appellant at 60. We disagree.

1.      Legal Principles

Courts review claims of ineffective assistance of counsel de novo. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). When a party claims ineffective assistance, the party must demonstrate "(1) deficient performance and (2) resulting prejudice." *Id.* at 457-58. "If either element of the test is not satisfied, the inquiry ends." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Counsel's performance is deficient when it "falls 'below an objective standard of reasonableness based on consideration of all the circumstances.'" *Estes*, 188 Wn.2d at 458 (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. We presume defense counsel's performance was reasonable. *Estes*, 188 Wn.2d at 458. Thus, the defendant bears the burden of rebutting that presumption by demonstrating that counsel had no legitimate or tactical reason for his or her conduct. *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021). "'Prejudice exists if there is a reasonable probability that but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *State v. Lopez*, 190 Wn.2d 104, 116, 410 P.3d 1117 (2018) (internal quotation marks omitted) (quoting *Estes*, 188 Wn.2d at 458).

2.      No Ineffective Assistance

Munoz-Hernandez challenges defense counsel's argument presented below to support the motion to suppress. Specifically, Munoz-Hernandez asserts that defense counsel should have advanced an argument to suppress the September 2023 DNA profile match based on a violation of article I, section 7 instead of suppression based on the unconstitutionality of RCW 69.50.4013,

particularly in light of *State v. Moses*, 22 Wn. App. 2d 550, 512 P.3d 600, *review denied*, 200 Wn.2d 1010 (2022).[8]

The court in *Moses* stated that "a later determination that a statute is unconstitutional does not necessarily invalidate an earlier finding of probable cause to believe that a person violated the statute." 22 Wn. App. 2d at 556. *Moses* is a precursor to the Supreme Court's holding in *Olsen*, which stated that an unconstitutional statute—specifically RCW 69.50.4013—is not "a nullity, void ab initio." *Olsen*, 3 Wn.3d at 701.

> During the suppression hearing, defense counsel argued:
>
> Because the [UPCS] statute was deemed unconstitutional, not only should his conviction have been vacated—which it was, because that was the only reason his DNA was in the system—the DNA should have been taken out of . . . whatever the system is that keeps those on file or on record, because nothing before and nothing since would require his DNA.

1 Verbatim Rep. of Proc. at 11. Defense counsel did not raise any article I, section 7 argument.

However, even assuming without deciding that defense counsel's performance was deficient by failing to raise constitutional arguments other than the unconstitutionality of RCW 69.50.4013, Munoz-Hernandez fails to establish prejudice. "'Prejudice exists if there is a reasonable probability that but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Lopez*, 190 Wn.2d at 116 (internal quotation marks omitted) (quoting *Estes*, 188 Wn.2d at 458).

---

[8] We note that Munoz-Hernandez's alternative argument on appeal is that his DNA evidence should have been suppressed under the exclusionary rule based on RCW 69.50.4013's unconstitutionality—essentially, the same reason asserted by his defense counsel below to support the motion to suppress and which Munoz-Hernandez now claims is erroneous.

Here, Munoz-Hernandez's argument assumes that had defense counsel raised a challenge based on article I, section 7, the "trial court likely would have granted [Munoz-Hernandez]'s motion to [suppress]" because "WSP did not have a warrant to analyze the DNA in 2023." Br. of Appellant at 60. However, as discussed above, Munoz-Hernandez fails to address RCW 43.43.754, which provided the legal authority for the State to retain Munoz-Hernandez's DNA profile for comparison after his UPCS conviction was vacated. The trial court based its denial of the suppression motion on RCW 43.43.754. Because there was authority of law for the State to retain Munoz-Hernandez's DNA profile, there has been no article I, section 7 violation. Thus, even if Munoz-Hernandez's defense counsel raised an article I, section 7 argument, there is no reasonable probability that the outcome of the proceedings would have been different. *Lopez*, 190 Wn.2d at 116. Accordingly, Munoz-Hernandez cannot establish prejudice, and his claim of ineffective assistance of counsel fails.

CONCLUSION

We affirm.

Lee, J.

We concur:

Glasgow, J.

Veljacic, A.C.J.